## BINE WHEELER v. STATE.

No. A-4273.   Opinion Filed Dec. 15, 1923.
(220 Pac. 962.)

(Syllabus.)

1. **Appeal and Error—Irregularities to be Affirmatively Shown.** Irregularities in the proceedings of courts of record will not be presumed, but must be properly and affirmatively shown.

2. **Courts—Evidence—Orders not to be Impeached by Evidence Aliunde.** The orders of a court of record which appear to be properly entered cannot be impeached by evidence aliunde the record; its proceedings and sessions and adjournments can be proved only by its records.

3. **Motions—Orders Showing Convening of County Court as Importing Absolute Verity.** An entry of an order showing the convening of a county court imports absolute verity, when brought into question in any subsequent proceeding, other than a proceeding to vacate or correct it, instituted in the court in which the order was made.

4. **Intoxicating Liquors—Unlawful Possession—Evidence Insufficient.** In a prosecution for having possession of intoxicating liquor, evidence considered, and held insufficient to support a verdict of conviction.

5. **Same—Evidence not Showing Liquor Usable as Beverage.** In a prosecution for having possession of intoxicating liquor, evidence held not to show that the liquor or compound in question was capable of being used as a beverage.

Appeal from County Court, Harmon County; E. C. Abernathy, Judge.

Bine Wheeler was convicted of having in his possession intoxicating liquor, and he appeals. Reversed.

C. H. Madden, for plaintiff in error.

George F. Short, Atty. Gen., and N. W. Gore, Asst. Atty. Gen., for the State.

DOYLE, J. The information in this case, filed June 13, 1921, in the county court of Harmon county, charges that Bine Wheeler did have in his possession about 25 gallons of intoxicating liquor, to wit, corn whisky or mash, which contained more than one-half of one per cent. of alcohol, measured by volume and capable of being used as a beverage, with the unlawful intent to sell the same. Upon his trial on the 25th day of January, 1922, he was by verdict of the jury found guilty as charged in the information. Motion for a new trial was duly filed, overruled, and the court by its judgment sentenced the defendant to be confined for 30 days in the county jail and to pay a fine of $250 and the costs. To reverse the judgment he appeals.

When the case was called for trial, the defendant filed a motion to dismiss on the ground that the court is without jurisdiction to hear and determine this cause, for the reason:

"That the January term has lapsed, in that this court was not convened the first Monday in January nor within a week thereafter of this year, 1922, and the defendant asks leave to introduce the testimony of the court clerk and of the sheriff of this county to prove the foregoing facts."

Counsel for the state objected to the introduction of this evidence, on the ground that the records of the court are the best evidence. The court sustained the objection, and further stated:

"The court further finds that the records of the court clerk show that the county court of Harmon county was reg-

ularly opened on the first Monday in January, 1922, and that at that time the court was adjourned until the 4th Monday in January, 1922, and for this reason the motion to dismiss is overruled.''

This action of the court is the first error assigned. It is the law that the acts of a court of record are known by its records alone, and cannot be established by parol testimony; it acts by its records, its openings, and sessions and adjournments can be proved only by its records. The record or entry of the court is higher and more trustworthy than any parol evidence can be. If one record is subject to be questioned by parol, then another must be, and all security and confidence in the stability of records are gone. 23 R. C. L. 158, and cases cited.

It is the well-settled rule in this state that orders and judgments of a court of record which appear to be properly entered cannot be impeached by evidence aliunde the record.

In the case of In re Coyle, 4 Okla. Cr. 133, 111 Pac. 666, it is said:

''It appears from the certified copy of the record that the orders therein contained were properly entered. So long as this record stands in any proceedings in which it may be brought into question, other than one to vacate and correct it, instituted in the court in which it was made, it imports absolute verity, and cannot be attacked or impeached in an application for habeas corpus.''

In the case of In re Tucker, 4 Okla. Cr. 221, 111 Pac. 665, it was held that the entry of an order showing the convening of the county court imports absolute verity when brought into question in any subsequent proceeding other than a proceeding to vacate or correct it, instituted in the court in which the order was made.

In Wilson v. State, 3 Okla. Cr. 714, 109 Pac. 289, it is said:

"The case-made contains no recital showing the absence of a journal entry convening the court on the first Monday in July, nor does it recite any other fact from which the absence of such an entry could be legitimately inferred. We are not permitted to presume that the court failed to observe the law, nor to hold that it so failed by a doubtful construction of this particular entry. The offense charged being one within the jurisdiction of the court, the plaintiff in error being present, and the trial being had on a day between the dates fixed by law for convening and finally adjourning the term, every presumption is in favor of the regularity of the proceeding; and this must be overcome by a proper showing in the case-made before we should hold that the court did not have jurisdiction."

It follows that the trial court properly sustained the objection to the evidence offered in support of the motion to dismiss, and did not err in overruling said motion.

Of the other errors assigned we deem it only necessary to consider the one, that the evidence is insufficient to support the verdict. The evidence shows that the sheriff and undersheriff and three deputy sheriffs, in executing a search warrant, went to the home of appellant, about 12 miles northeast of Hollis, and found a barrel in the yard of appellant's house that had been about half full of what they termed mash.

Sheriff Horton testified:

"We found by the house a barrel that about 20 gallons of mash had been poured out of. There was a line around inside of the barrel, and below the line it was wet."

B. B. Briscoe, undersheriff, testified:

"We went out Saturday night and stayed there until 2 o'clock in the afternoon of the next day. We got up pret-

ty close to the house, and Mr. Wheeler went out of the window on the east side and rolled a barrel out from the house and poured the contents out. We filled up a couple of fruit jars of the stuff and brought it to town. We arrested Mr. Wheeler and brought him to town. We sent the stuff to a chemist at Oklahoma City. I would say that it was mash set for the making of whisky. I do not know whether it was intoxicating of not.''

Ed Smith, deputy sheriff, testified:

''We stationed ourselves in a shinnery patch where we could view the house. We stayed there until about 2 o'clock Sunday afternoon and started towards the house. Arriving there we saw 10 or 15 gallons of corn mash lying on the ground where he had poured it out of the barrel. There was some meal, barley, and sugar left in the barrel. Mr. Wheeler asked the sheriff if he had a search warrant, and the sheriff said he did.''

Dr. L. B. Ritter testified:

''I am a chemist for the Wesley Laboratory at Oklahoma City. I made an analysis of alcoholic liquor labeled corn whisky that I received from the county attorney of Harmon county, and found the same to contain 19.97 per cent. ethyl alcohol, measured by volume.''

The state rested, and the defendant demurred to the evidence and moved the court to direct a verdict of acquittal on the ground there was no evidence to show that the substance analyzed was capable of being used as a beverage.

As a witness in his own behalf, Bine Wheeler testified:

''There was nothing in the barrel but a half sack of bran, some sour syrup that we could not use, and dish water. It was raining that Sunday morning, and the gutter on the east side of the house had blown down. My wife asked me to fix it. Bert Clark was there. We rolled the barrel up to the side of the house, and I got on the barrel to fix the

gutter. As I got off the barrel, it turned over. I have a sow with ten little pigs, and I used the slop to feed them."

Mrs. Arche Wheeler testified:

"I live about 200 yards from Bine Wheeler's house. I visit there often. The barrel on the east side of the house was for slop, and things from the table. I have put slop in it myself. I have often seen Bine Wheeler slop his hogs from the barrel."

Clara Wheeler, appellant's wife, testified:

"It was nothing but a regular slop barrel. I used it for slop of the table and for dish water. The slop was fed to our sow and her ten pigs. It was never used for the purpose of making mash or for distilling whisky."

Homer Beach testified:

"I farmed the Arch Miller place, and I was frequently around Bine Wheeler's house. Often saw slop poured in a barrel near the house, and saw Bine Wheeler several times take slop out of it to feed his pigs; the last time was noon Saturday, the day before his arrest."

Three other witnesses testified that they were near neighbors and several times saw Bine Wheeler take slop from the barrel and feed it to his hogs.

At the close of the evidence the defendant asked the court for a directed verdict of acquittal, on the ground that the evidence was insufficient to warrant a conviction.

The sufficiency of the evidence to sustain the conviction is challenged on several grounds; however, it is only necessary to consider the one, that the evidence does not establish that the so-called mash or compound in question was capable of being used as a beverage.

The statute provides that it shall be unlawful to have the possession of any liquors or compounds of any kind or de-

scription whatsoever, whether medicated or not, which contain as much as one-half of one per cent. of alcohol, measured by volume, and which is capable of being used as a beverage,'' with the intention of violating any of the provisions of the prohibitory enforcement act. Section 7002, Comp. Stats. 1921.

One of the essential elements of the offense charged is that the liquor or compound was capable of being used as a beverage. The character of a compound or mixture containing as much as one-half of one per cent. of alcohol or more may be such that its use as a beverage is impossible.

The word ''beverage,'' as defined by Webster. is, ''Liquid for drinking; drink.'' The mere fact that a person, in order to gratify an inordinate appetite for intoxicants, may drink poisonous or noxious compounds or mixtures containing alcohol, is not evidence that the same is capable of being used as a beverage.

Having possession of a compound or mixture containing as much as one-half of one per cent. alcohol, and which is not intended and cannot be used as a beverage, is not an offense, and the mere fact that such compound or mixture can be and is swallowed, does not make it a beverage.

In State v. Costa, 78 Vt. 198, 62 Atl. 38, it was said:

''The mere fact that a liquid can be and is swallowed, does not make it a beverage''; the question being whether it was intended to be used as a beverage.

''The use of liquor as a 'beverage' does not mean simply that the same is to be drunk, but the word 'beverage' is used to distinguish the act of drinking liquor for the mere pleasure of drinking, from its use for medicinal purposes.'' 1 Words and Phrases, First Series, p. 769; Gue v. City of Eugene, 52 Or. 282, 100 Pac. 254.

Carefully considering the whole testimony in the case, we fail to find any competent evidence showing or tending to show that the so-called mash or swill in question was capable of being used as a beverage, and for this reason we think the conviction is not sustained by the evidence, as said by this court in Loftin v. State, 11 Okla. Cr. 428, 147 Pac. 505:

"Considering the presumption that the law always indulges as to the innocence of the accused and the necessity of establishing the guilt of the defendant beyond a reasonable doubt, the evidence should be of such a character as to overcome prima facie the presumption of innocence. If the evidence only raises a mere suspicion, or, admitting all it tends to prove, the defendant's guilt is left dependent upon mere supposition, surmise, or conjecture, it is insufficient to sustain a conviction."

If the defendant be guilty he should be convicted upon competent evidence and not upon insinuations and innuendo. The administration of even-handed justice demands it, and the law will sanction no other kind of a conviction.

For the reasons indicated, the judgment of the lower court is reversed.

MATSON, P. J., and BESSEY, J., concur.