## ROBERT JORDAN et al. v. STATE.

No. A-6488.   Opinion Filed Oct. 6, 1928.
(270 Pac. 863.)

Jas. A. Embry, for plaintiffs in error.

Edwin Dabney, Atty. Gen., for the State.

DAVENPORT, J.   The plaintiffs in error, hereinafter called the defendants, were convicted upon a trial by a jury of the crime of possession of about 50 gallons of mash containing more than one-half of 1 per cent. of alcohol, measured by volume, and capable of being used as a beverage, and each defendant was sentenced to pay a fine of $50 and be imprisoned in the county jail for a period of 30 days.   Motion for new trial was filed and overruled, and defendants duly excepted and have appealed to this court.

The testimony on behalf of the state is, in substance, as follows:   John Crawley, a deputy sheriff, testified that he knew the defendants; that on or about August, 1926, he had a search warrant for a tract of land, and that he, a Mr. Wallace, Mr. Maples, and Bill Dunn went out to the

Mullins place and served the search warrant on him; that he searched the Mullins place and found some empty barrels, but no whisky in them; they smelled like they had had whisky in them.

The testimony of the other witnesses was in substance the same as Mr. Crawley, who searched the defendants' home; that defendant Jordan was dining at the Mullins home when they went there. Witnesses further testify the only thing they found at the Jordan house was some sugar and fruit jars; that something like 100 yards or more from where Jordan lived they found in a house, which the testimony shows to have been occupied by Marion Gray, a still, some mash, and a cook stove. This is in substance all of the testimony of the state which tends to connect the defendant in any way with the mash and still found in the cabin 100 or more yards away from where Mr. Jordan, one of the defendants in the case, lived.

The testimony shows that Mullins, the other defendant, lived a quarter of a mile or more away, and that he did not have anything to do with the house that had been formerly occupied by Gray, that the property was rented to Gray, and that Gray had moved into town only a day or two before the search was made.

The testimony on behalf of the defendants tends to show that Mr. Jordan had only moved to the place where he was living on Saturday night previous to the Sunday morning the officers went out and made the search, and when they came out to the place defendant Jordan and his wife were taking their meal at the home of the defendant Mullins. The testimony on behalf of the defendants shows that there was a section line running between the Mullins place and the cabin where Gray had lived, in which the mash, a still, and a cook stove were found. Jordan had not lived on the place but one night according to the uncontradicted testimony, and Mullins did not live on the same

subdivision of land that the cabin was located on where they claim they found the mash, a still, and cook stove. The proof is not contradicted that a man by the name of Marion Gray had been living in the cabin where it was claimed the mash, a still, and cook stove were found, and that Gray had only moved away from the house a day or two previous to the time the officers claim to have made the search.

The proof further shows that the Gray house was across a section line from the houses occupied by Mullins and Jordan; the defendant Jordan having moved to the house that was searched by the officers on Saturday night previous to their searching it on Sunday morning and that he knew nothing about the house or anything that had been on the place, and had not had an opportunity to look around over the lands near him, nor had he been across to where the cabin is located that the testimony shows to have been occupied by Gray. Jordan denied any knowledge of the mash, still, and cook stove being in the cabin, or denied he had any knowledge of their being there, or having any interest in the articles claimed to have been found.

The defendant Mullins, who lived more than a quarter of a mile from the cabin where it was claimed they found the mash, still, and cook stove, denied any knowledge of their being there, and denied having any interest in them. The testimony on his behalf shows that the cabin they searched was not on the subdivision of the land the defendant Mullins had in his possession or control.

The defendants have assigned four errors alleged to have been committed in the trial of their case, all of which will be considered together, as they relate to the sufficiency of the evidence to sustain a conviction; that is, Is the evidence sufficient to sustain a conviction of one or both of the defendants for wrongfully having

possession of intoxicating liquor, to wit, 50 gallons of mash containing more than one-half of 1 per cent. of alcohol, capable of being used as a beverage, with the intent then and there on the part of the defendants to sell, barter, give away, or otherwise furnish the same? It is strongly urged by the defendants that the evidence wholly fails to sustain the allegations in the information, and for that reason the court should have directed the jury to return a verdict in favor of the defendants, or should have sustained their motion for a new trial.

The state called Constance Walcott, who testified she was a pharmacist, that she analyzed the contents of a jar containing a substance brought to her by the sheriff, and that it contained 3 per cent. alcohol. She did not state the method used by her in analyzing the contents of the jar about which she testified. There is no testimony whatever showing that the contents of the jar she claims to have analyzed was a compound that was capable of being used as a beverage. No effort is made by the state to show that the compound was capable of being used as a beverage.

In Wheeler v. State, 25 Okla. Cr. 365, 220 P. 962, this court said:

"One of the essential elements of the offense charged is that; the liquor or compound was capable of being used as a beverage. The character of a compound or mixture containing as much as one-half of 1 per cent. of alcohol or more may be such that its use as a beverage is impossible."

Defendant urges that the evidence upon behalf of the state is insufficient to sustain a conviction of possession. Upon a careful examination of all the evidence we are constrained to hold that the evidence is not sufficient to sustain the verdict; that the evidence falls far short of that certainty required to convict in criminal cases. Lunsford v. State, 38 Okla. Cr. 233, 260 P.

514; Tipton v. State, 38 Okla. Cr. 74, 258 P. 1053; Mater v. State, 9 Okla. Cr. 380, 132 P. 383.

For the reasons herein stated, the case is reversed.

DOYLE, P. J., and EDWARDS, J., concur.