OPINION — AG — **** (1) A FOOD FLAVORING CONTAINING 12 PER CENT (12%) ALCOHOL DOES NOT CONSTITUTE A BEVERAGE CAPABLE OF BEING CONSUMED BY HUMAN BEING UNDER 37 O.S. 1961 506 [37-506](2) (2) THE PRESENCE OF RUM OR BRANDY IN A FOOD FLAVORING, IF EXEMPTED BY THE FEDERAL GOVERNMENT FROM TAXATION, COMES WITHIN EXEMPTION OF A SPIRIT UNDER 37 O.S. 1961 506 [37-506](27) CITE: 37 O.S 1961, 501 (DUANE LOBAUGH)
Food Flavoring — Alcohol — Beverage 1. A food flavoring containing 12 per cent alcohol does not constitute a beverage capable of being consumed by human beings under 37 O.S. 506 [37-506](2) (1961). 2. The presence of rum or brandy in a food flavoring, if exempted by the federal government from taxation, comes within exemption of a spirit under 37 O.S. 506 [37-506](27) (1961). The Attorney General has had under consideration your letter of November 20, 1968, wherein you relate that certain grocery stores in Woodward are selling food flavorings which are flavored by various spirits, including rum and brandy. That the label shows an alcoholic content of 12 per cent and indicates the actual presence of the spirit to which the flavor is attributed. You then in effect ask the following questions: 1. Is a bottle of food flavoring sold in public stores, showing an alcoholic content to be 12 per cent, and contains, inter alia, brandy or rum, considered an alcoholic beverage under the definition contained in Title 37 O.S. 506 [37-506](2) (1961)? 2. Do the contents of brandy or rum in food flavorings constitute a spirit within Title 37 O.S. 506 [37-506](27) (1961)? The pertinent statute is contained in Title 37 O.S. 506 [37-506] (1961), which provides: "(2) `Alcoholic Beverage' means alcohol, spirits, beer, and wine as those terms are defined herein and also includes every liquid or solid, patented or not, containing alcohol, spirits, wine or beer and capable of being consumed as a beverage by human beings. (Emphasis added) "(27) `Spirits' means any beverage other than wine or beer which contains more than three and two-tenths (3.2%) alcohol measured by weight and obtained by distillation, whether or not mixed with other substances in solution and includes those products known as whiskey, brandy, rum, gin, vodka, liquors, cordials and fortified wines and similar compounds; but shall not include any alcohol-liquid completely denatured in accordance with the Acts of Congress and regulations pursuant thereto. " (Emphasis added) The Court of Criminal Appeals stated in Wheeler v. State, 25 Okl. Cr. 365, 220 P. 962 (1923), as follows: "The word `beverage', as defined by Webster is `Liquid for drinking; drink'. The mere fact that a person, in order to gratify an inordinate appetite for intoxicants, may drink poisonous or noxious compounds or mixtures containing alcohol, is not evidence that the same is capable of being used as a beverage. "Having possession of a compound or mixture containing as much as one-half of one percent alcohol, and which is not intended and cannot be used as a beverage, is not an offense, and the mere fact that such compound or mixture can be and is swallowed, does not make it a beverage. "In State v. Costa, 78 Vt. 198, 62 A. 38, it was said; `The mere fact that a liquid can be and is swallowed, does not make it a beverage'; the question being whether it was intended to be used as a beverage. "`The use of liquor as a "beverage"' does not mean simply that the same is to be drunk, but the word `beverage' is used to distinguish the mere act of drinking liquor for the mere pleasure of drinking, from its use for medical purposes. I Words and Phrases. First Series, p. 769; Gue v. City of Eugene,52 Or. 282,100 P. 254." See Simms v. State, Okl. Cr.,29 Okl. Cr. 172, 233 P. 494 (1925), upholding Wheeler v. State, supra. In the syllabus of Woolworth Co. v. State,72 Okl. Cr. 125, 113 P.2d 399 (1941), the Court stated: "2. The term `capable of being used as a beverage' as contemplated by the Legislature in the passage of said act, means a liquid that is reasonably capable of being drunk, either for the pleasure of drinking or its after effect, and does not apply to a liquid that it is possible to swallow, but not reasonably fit or palatable; `beverage,' itself, means a liquid for drinking, usually a drink artificially prepared and of an agreeable flavor. "3. If the liquid involved is not among the liquors ordinarily used as intoxicating beverages, but is a toilet article, where the distinctive character and effects of intoxicating liquors are gone and its use as a beverage is rendered undesirable or practically impossible by reason of other ingredients, and the alcohol contained therein has been denatured under a formula prescribed in the United States Dispensatory or like standard authority and is used merely as a vehicle for or preservation of the other ingredients, the article will not be within the prohibition of our statute, although its use may produce intoxication." The Court, in its decision, reasoned as follows: "The county attorney argued with some force that the term `capable of being used as a beverage' is not synonymous with the term `fit for use as a beverage;' and since the testimony of the witnesses for the defendant only went so far as to state that bay rum was unfit for beverage purposes, that such test is insufficient to show that it was not capable of being used as a beverage. "However, fitness to be used as a beverage is certainly one of the strongest factors in determining whether the liquid involved is capable of being used as a beverage. Otherwise, we shall have to hold that any liquid that may be swallowed would be capable of being used as a beverage. "The state evidently relies solely upon the testimony of the four men who testified that they had drunk bay rum frequently to prove that it was `capable of being used as a beverage.' The evidence shows these men were habitual drunkards, who drank anything with alcohol in it. These well-seasoned inebriates are to secure some substitute for intoxicating liquor if the same cannot be found, whether it be in the form of bay rum, flavoring extract, canned heat, Jamaica Ginger, bitters, or any of dozens of various kinds of medicated compounds and after-shaving lotion, so long as the liquid contained alcohol in sufficient quantities that they could `get a kick' from it, and, although the partaking might seriously endanger their health, as such grogs' appetite must be satisfied. But the fact that these perennial drunkards can stomach bay rum is not to this court sufficient grounds for holding that this toilet article comes within the legislative classification of intoxicating liquor, If we were to hold otherwise, it would brand a criminal hundreds of our citizens who have in good faith sold bay rum and kindred toilet articles under the belief that the same were not intoxicating liquors as defined under our statutes." The Woolworth case was decided during the days of prohibition in Oklahoma. The Alcoholic Beverage Control Act was passed in 1959 (37 O.S. 501 [37-501] (1961) et seq.) and it provides in Section 506, supra, "capable of being consumed as a beverage by human beings" (Emphasis added). At this time, there appears no reason to distinguish the language of the Woolworth case from Section 506, merely because liquor has been legalized, or by the addition of the words "by human beings". There appears no more reason to make food flavorings a beverage capable of being consumed by human beings than bay rum. The Director of the Oklahoma Alcoholic Beverage Control Board has made a study of the situation contained in your letter and has determined to his satisfaction that the "rum" and "brandy" as used in the flavoring has been classified by the Federal government as an authorized use for flavorings and as such, does not pay the federal tax because they are non-beverage products suitable for cooking and flavoring only. The Director has been further satisfied that no other state liquor control agency controls these food flavorings. The Attorney General is of the opinion that your first question be answered in the negative, that such "food flavorings" do not constitute a beverage within the meaning of the Alcoholic Beverage Control Act. The Attorney General is of the further opinion that your second question be answered in the negative, that the spirits of rum and brandy contained therein are within the exemption set forth in Title 37 O.S. 506 [37-506](27) (1961). (Duane Lobaugh)