## WHITLEY v. THE STATE.

1. The act approved August 6, 1907 (Acts 1907, p. 81), entitled "An act to prohibit the manufacture, sale, barter, giving away to induce trade, or keeping or furnishing at public places, or keeping on hand at places of business, of any alcoholic, spirituous, malt or intoxicating liquors or intoxicating bitters or other drinks which, if drunk to excess, will produce intoxication; to except sales of alcohol in certain cases, upon certain conditions; to provide certain rules of evidence in connection with the enforcement thereof; to prescribe penalties, and for other purposes," is not unconstitutional on the ground that it is in conflict with article 8, section 1, paragraph 1, of the constitution, which declares that "There shall be a thorough system of common schools for the education of children in the elementary branches of an English education only, as nearly uniform as practicable, the expenses of which shall be provided for by taxation, or otherwise," or that it is in conflict with article 8, section 3, paragraph 1, of the constitution, which reads as follows: "The poll-tax, any educational fund now belonging to the State (except the endowment of, and debt due to, the University of Georgia), a special tax on shows and exhibitions, and on the sale of spirituous and malt liquors, which the General Assembly is hereby authorized to assess, and the proceeds of any commutation tax for military service, and all taxes that may be

assessed on such domestic animals as, from their nature and habits, are destructive to other property, are hereby set apart and devoted for the support of common schools."

2. The act of 1907 is not unconstitutional on the ground that it conflicts with article 1, section 5, paragraph 2, of the constitution, which provides that "The enumeration of rights herein contained as a part of this constitution shall not be construed to deny to the people any inherent rights which they may have hitherto enjoyed."

3. Said act is not unconstitutional on the ground that it conflicts with article 3, section 7, paragraph 8, of the constitution, which provides that "No law or ordinance shall pass which refers to more than one subject-matter."

4. A plea in abatement to an accusation set up that said act was unconstitutional as being in violation of article 3, section 7, paragraph 14, of the constitution, which provides that "No bill shall become a law unless it shall receive a majority of the votes of all the members elected to each house of the General Assembly, and it shall, in every instance, so appear on the journal," and of article 3, section 7, paragraph 4, which provides that "Each house shall keep a journal of its proceedings, and publish it immediately after its adjournment," and alleged that the legislative journals showed that the bill was introduced in the Senate and passed by a vote of a majority of the members thereof; that it was transmitted to the House, where several material amendments were made to it, and as amended it was passed by a vote of a majority of the members (the number of votes cast in each of these instances being stated) ; that it was then returned to the Senate, where several amendments were proposed and rejected, and that the entry on the Senate journal in regard to the final action of that body concurring in the House amendments did not show that the bill as altered by the House or the alterations therein received the votes of a majority of all the members elected to the Senate. *Held*, that such plea was insufficient in law, and was properly stricken.

JULY 13, 1910.

The Court of Appeals certified to the Supreme Court the following questions :

1. The defendant was tried in the criminal court of Atlanta on an accusation charging that he, in the county of Fulton, on the 26th day of February, 1909, did keep on hand at his place of business intoxicating liquors. Was the accusation good as against a demurrer on the following grounds? :

"That the legislature of the State of Georgia was without authority to enact the prohibition law under which this defendant is indicted (to wit, the act approved August 6th, 1907, entitled, 'An act to prohibit the manufacture, sale, barter, giving away to induce trade, or keeping or furnishing at public places, or keeping on hand at places of business, of any alcoholic, spirituous, malt or intoxi-

cating liquors or intoxicating bitters or other drinks which, if drunk to excess, will produce intoxication; to except sales of alcohol in certain cases, upon certain conditions; to provide certain rules of evidence in connection with the enforcement thereof; to prescribe penalties, and for other purposes'). That by article 8, sec. 1, par. 1, of the constitution of said State it is provided that 'there shall be a thorough system of common schools for the education of children,' and by article 8, sec. 3, par. 1, of said constitution it is provided that 'the poll-tax, any educational fund now belonging to the State (except the endowment of, and debt due to, the University of Georgia), a special tax on shows and exhibitions, and on the sale of spirituous and malt liquors, which the General Assembly is hereby authorized to assess, and the proceeds of any commutation tax for military service, and all taxes that may be assessed on such domestic animals as, from their nature and habits, are destructive to other property, are hereby set apart and devoted for the support of common schools,' and that it is therefore mandatory upon the General Assembly of said State to assess a specific tax on the sale of spirituous and malt liquors as one means of supporting such schools; and said prohibition act being an act to prohibit the sale of said liquors in said State, and by consequence an act to destroy the subject-matter on which said mandatory constitutional tax is ordained to operate, is, so far as the same assumes to prohibit the sale of such liquors in said State, no law, but null and void by reason of a lack of constitutional authority in said General Assembly to enact the same.

"That said prohibition act, so far as the same assumes to prohibit the manufacture, sale, barter, giving away, keeping and furnishing of any of the liquors therein specified, in said State, is inconsistent with and repugnant to article 1, sec. 5, par. 2, of the constitution of said State, which provides as follows, to wit: 'The enumeration of rights herein contained as a part of this constitution shall not be construed to deny to the people any inherent rights which they may have hitherto enjoyed,' because at the time said constitution was adopted in 1877 the people of said State had ever theretofore enjoyed, as an inherent right, the right to make, sell, barter, give away, keep and furnish any such liquors, subject only to sundry statutory regulations as to the sale of such liquors in tippling-houses, and the intent and effect of said just-cited clause of said constitution was and is to inhibit the General Assembly of said

State from denying the same, the defendant conceding that said Assembly has the right to regulate said rights by any regulation not destructive thereof or otherwise illegal.

"That the act referred to and heretofore described is in direct contravention of paragraph 8, sec. 7, art. 3 of the constitution of the State of Georgia, which said paragraph is to be found in § 5771 of the Code of the State of Georgia, and which paragraph provides, amongst other things, as follows: 'No law or ordinance shall pass which refers to more than one subject-matter;' because said act is repugnant to the constitutional provision aforementioned, for the reason that the same in terms prohibits both the sale and manufacture of the various liquors in said act mentioned. That sale and manufacture are in the very nature of things two separate and distinct subject-matters; that, because of the limitation imposed upon the power of the General Assembly by the terms of the paragraph aforementioned, the prohibition against both the sale and manufacture of such liquors could not lawfully be included within the terms of said act; that the two provisions of the acts aforementioned are so blended one with the other as that they constitute one general expression of the legislative scheme, and neither can be disregarded without destroying the evident purpose intended to be accomplished by the passage of the legislation in question; and therefore, that, because the said two subject-matters are thus sought to be included within the terms of said act, the said act is rendered thereby unconstitutional, null, and void as a whole."

2. To the accusation referred to in the preceding question, the defendant filed a timely plea in abatement on the following ground, namely: "That the act of the legislature under which this prosecution is being conducted is void and is no law, for the following reasons, to wit: Because by art. 3, sec. 7, par. 14, of the constitution of said State, it is provided that 'No bill shall become a law unless it shall receive a majority of the votes of all the members elected to each house of the General Assembly, and it shall, in every instance, so appear on the journal,' and article 3, sec. 7, par. 4, of said constitution, provides that 'each house shall keep a journal of its proceedings, and publish it immediately after its adjournment;' and it does not appear on the journal, so kept and published, of either house of said General Assembly that a bill identical with said prohibition act received a majority of the votes of all the

members elected to each house of said General Assembly. On June 26th, 1907, there was introduced in the Senate of said State a certain bill to prohibit the sale in said State of any drink, which, if drunk to excess, will produce intoxication, which bill, after being altered in a number of material particulars, was passed by said Senate on July 13th, 1907, by a vote of thirty-four (34) to seven (7), the total number of members elected to said Senate being forty-four (44) ; that this bill was altered by the House of Representatives of said State in a number of material particulars, and as so altered was passed by said House on July 30th, 1907, by a vote of one hundred thirty-nine (139) to thirty-nine (39), the total number of members elected to said House being one hundred eighty-three (183) ; and that it does not appear on the journal of said Senate that said bill so altered by said House, or the alterations therein made by said House, received the votes of a majority of all the members elected to said Senate. While it appears on the journal that said Senate passed one bill on July 13, 1907, by a vote of thirty-four (34) to seven (7), and that said House passed a different bill on July 30, 1907, by a vote of one hundred thirty-nine (139) to thirty-nine (39), it does not appear on the journals that one and the same bill, identical with said prohibition act, received the votes of a majority of all the members elected to each House of said General Assembly, as required by said constitution as aforesaid, and therefore said prohibition act is no law, but null, nonexistent, and void. This defendant attaches hereto as a part hereof, marked Exhibit 'A,' the text of the bill originally introduced in the Senate, and of all the alterations made therein, the text of the bill passed by the Senate, the text of the alteration made in the bill by the House, and the text of the bill passed by the House, with appropriate reference to the pages of the journals, and a summary of the points of divergence between the bills by the Senate and by the House."

The exhibit "A" referred to is as follows: "On June 26, 1907, a bill was introduced in the Senate which read thus: 'A bill to be entitled an act to prohibit the sale, barter, or giving away to induce trade, or furnishing at public places, of any alcoholic, spirituous, malt, or intoxicating liquors, or intoxicating bitters, or other drinks, which if drunk to excess will produce intoxication, and for other purposes. Be it enacted by the General Assembly of the

State of Georgia, and it is hereby enacted by authority of the same: Sec. 1. That, from and after the first day of January next after the passage of this act, it shall not be lawful for any person, within the limits of this State, to sell or barter for valuable consideration, either directly or indirectly, or give away to induce trade at any place of business, or furnish at any other public places, or manufacture for the purpose of sale, any alcoholic, spirituous, malt, or intoxicating liquors, or intoxicating bitters, and any person so offending shall be guilty of a misdemeanor, and shall be punished as prescribed in section 1039 of the Penal Code of Georgia. Sec. 2. Be it further enacted, that nothing in this act shall be so construed as to prevent the manufacture, sale, and use of domestic wines or cider, or the sale of wines for sacramental purposes: provided, such wine or cider shall not be sold in barrooms by retail, or in places to be drunk on the premises; nor shall anything herein contained prevent licensed druggists from selling or furnishing pure alcohol for medical, art, scientific, and mechanical purposes. Sec. 3. Be it further enacted, that all laws and parts of laws in conflict with this act be and the same are hereby repealed.' This bill was read first on June 26th, 1907, Sen. Journ. 14; second time on July 3, 1907, S. J. 104; and third time on July 13, 1907, S. J. 148; but on each of these three readings it was read precisely as originally introduced, no changes whatever being made therein. After the third reading, it was altered in the following particulars: (1) The words 'or keep on hand at their place of business' were inserted in the caption between the word 'place' and the word 'of.' S. J. 150.    (2) The words 'or keep on hand at their place of business' were inserted in sec. 1, between the word 'sale' and the word 'any.' S. J. 151.    (3) The words, 'nor shall it be lawful in the limits of said State for intoxicating liquors to be sold in dispensaries, and the sale of intoxicating liquors in said State shall be prohibited to private persons and to the State, its officers and agents,' were added to sec. 1 at the end thereof. S. J. 149.    (4) Sec. 2 was stricken from the bill and in lieu thereof a new section two was inserted as follows: 'Section 2. Be it further enacted, that nothing in this act shall be so construed as to prevent licensed druggists from selling or furnishing pure alcohol for medicinal purposes only, provided the same is sold or furnished for such purpose upon the presentation of a written prescription from a

reputable physician actually in charge of the patient for whom such prescription is given. Before giving out any prescription as contemplated in this act, it shall be the duty of such physician to have actually examined any and all persons applying for same and to have determined from such examination that the same is necessary, and that said written prescription shall certify that said examination has been made, and that any person violating this section shall be punished as prescribed in section 1039 of the Penal Code of 1895.' S. J. 150. (5) Section 3 was stricken from the bill and a new section three inserted in lieu thereof, as follows: 'Section 3. Be it further enacted, that nothing in this act shall prohibit the sale, by licensed druggists, of wood or denatured alcohol for art, scientific, and mechanical purposes, or grain alcohol for bacteriologists, who are actually engaged in that class of work, for scientific purposes only.' S. J. 150, 149. (6) A section four was added as follows: 'Section 4. Be it further enacted by the authority aforesaid, that all laws and parts of laws (in conflict with this act) be and the same are hereby repealed.' S. J. 151.

"As thus altered the bill read: 'A bill to be entitled an act to prohibit the sale, barter, or giving away to induce trade, or furnishing at public places, or keep (ing) on hand at their places of business, of any alcoholic (spirituous, malt, or intoxicating liquors or intoxicating bitters, or other drinks which, if drunk to excess, will produce intoxication, and for other purposes. Be it enacted by the General Assembly of the State of Georgia, and it is hereby enacted by authority of the same. Sec. 1. That, from and after the first day of January next after the passage of this act, it shall not be lawful for any person within the limits of this State to sell or barter for valuable consideration, either directly or indirectly, or give away to induce trade at any place of business, or furnish at any other public places, or manufacture for the purpose of sale, or keep on hand at their places of business, any alcoholic, spirituous, malt, or intoxicating liquors, or intoxicating bitters, or other drinks which if drunk to excess will produce intoxication, and any person so offending shall be guilty of a misdemeanor and shall be punished as prescribed in section 1039 of the Penal Code of Georgia. Nor shall it be lawful in the limits of said State for intoxicating liquors to be sold in dispensaries, and the sale of intoxicating liquors in said State shall be pro-

hibited to private persons and to the State, its officers and agents. Section 2. Be it further enacted, that nothing in this act shall be so construed as to prevent licensed druggists from selling or furnishing pure alcohol for medicinal purposes only, provided the same is sold or furnished for such purpose upon the presentation of a written prescription from a reputable physician actually in charge of the patient for whom such prescription is given. Before giving out any prescription as contemplated in this act, it shall be the duty of such physician to have actually examined any and all persons applying for same and to have determined from such examination that the same is necessary, and that said written prescription shall certify that said examination has been made, and that any person violating this section shall be punished as prescribed in section 1039 of the Penal Code of 1895. Section 3. Be it further enacted, that nothing in this act shall prohibit the sale, by licensed druggists, of wood or denatured alcohol for art, scientific, and mechanical purposes, or grain alcohol for bacteriologists, who are actually engaged in that class of work, for scientific purposes only. Section 4. Be it further enacted by the authority aforesaid, that all laws and parts of laws (in conflict with this act) be and the same are hereby repealed.'

"As above altered, the bill was passed by the Senate on July 13, 1907, by a vote of 34 to 7, which vote appears on the journal. S. J. 148. The bill was then read in the House first time on July 17, 1907, H. J. 362; second time on July 19th, 1907, H. J. 415; and third time on July 30, 1907, H. J. 563; and on each of these three readings was read precisely as it came from the Senate, no changes whatever being made therein. After its third reading it was altered in the following particulars: (1) The caption was stricken out, and the following inserted in lieu thereof: 'An act to prohibit the manufacture, sale, barter, giving away to induce trade, or keeping or furnishing at public places, or keeping on hand at places of business, of any alcoholic, spirituous, malt, or intoxicating liquors, or intoxicating bitters, or other drinks which, if drunk to excess, will produce intoxication; to except sales of alcohol in certain cases upon certain conditions, and to provide certain rules of evidence in connection with the enforcement hereof; to prescribe penalties, and for other purposes.' H. J. 567-8. (2) The words 'keep or' were inserted in sec. 1, between the word 'or' and the word 'furnish.'

II. J. 568. (3) The words 'for the purpose of sale,' after the word 'manufacture,' in section 1, were stricken out. H. J. 568-9. (4) The words, 'provided, that licensed druggists may sell and furnish pure alcohol, for medical purposes only, upon written prescription of a regular practicing physician of this State, in the manner herein prescribed, to wit: Before any physician shall issue any such prescription, he shall make an actual examination of the person for whom the prescription is granted. The prescription shall be substantially in the following form: Georgia,.............. County. I,............., a regular practicing physician under the laws of said State, do hereby prescribe for the use of........, a patient in my charge, whom I have personally examined,........ of pure alcohol, and do certify in my opinion that the same is necessary in the alleviation or cure of illness from which said patient is suffering. This (date). Signed by the physician. No prescription shall be filed [filled] hereunder except under the date upon which it is dated and issued, or upon the following day. Within ten days after the same is filled by the druggist he shall file said prescription for record with the ordinary of the county in which filled, who shall cause the same to be recorded in his office, and a certified copy of the same, or the original prescription, showing it has been recorded, shall be primary evidence in any court in this State. The record containing such prescription, showing it has been recorded, shall be open to public inspection. A recording fee of five cents for each prescription so recorded shall be paid by such druggists to the ordinary. Upon any prosecution under this act the burden of proving the defense that the sale was pure alcohol, under prescription as herein provided for, shall be upon the defendant. Provided, further, no druggist who is also a practicing physician shall fill his own prescriptions hereunder, nor shall they be filled at any drug-store in which said physician is financially interested, and no prescription shall be refilled; nor shall more than one pint be furnished on any one prescription. The delivery of the alcohol under such prescription shall be made only directly to the person for whom such prescription is issued, or to the physician, or, in case of a minor, to his parent or guardian for him, or, in case of a married woman, to her husband for her. Provided, that nothing in this act shall be so construed as to prevent wholesale druggists from

selling or furnishing alcohol in wholesale quantities to regular licensed retail druggists or public charity hospitals or to medical or pharmaceutical colleges. Be it further provided, that all wholesale druggists shall be required to keep a complete record of all their sales of alcohol, which record shall at all times be open for inspection to the regular authorities of such counties or cities in which such wholesale stores are located,' were added to sec. 1, at the end thereof. H. J. 566-7. (5) Sec. 2 was stricken out and a new section two was inserted in lieu thereof, as follows: 'Section 2. Be it further enacted by the same authority, that any person, firm, or corporation who shall violate this act in any respect shall be guilty of a misdemeanor; any physician who shall issue a prescription hereunder, containing any false statements, shall be guilty of a misdemeanor; any druggist who shall fill any prescription for alcohol in anywise other than herein allowed, or shall fail to file a prescription filled by him hereunder with the ordinary within the time prescribed, shall be guilty of a misdemeanor; any person who shall obtain alcohol for another in accordance with the terms hereof, and who shall convert the same to any other use, shall be guilty of a misdemeanor.' H. J. 568. (6) In addition to the foregoing alterations, it appears by the journals that the House further altered the bill passed by the Senate by what is known on the journals as 'House amendment No. 18.' The text of this particular alteration does not appear on the journals, but it does appear that it was at least four lines in length and contained the word 'five' in the second line and also the word 'five' in the fourth line. S. J. 323.

"As altered by the House (otherwise than by House amendment No. 18) the bill then read thus (the alterations made by the House being indicated by underscoring) : 'A bill to be entitled an act to prohibit the *manufacture,* sale, barter, giving away to induce trade, *or keeping* or furnishing at public places, or keeping on hand at places of business, of any alcoholic, spirituous, malt, or intoxicating liquors, or intoxicating bitters, or other drinks, which, if drunk to excess, will produce intoxication; *to except sales of alcohol in certain cases, upon certain conditions; to provide certain rules of evidence in connection with the enforcement hereof; to prescribe penalties,* and for other purposes. Sec. 1. Be it enacted by the General Assembly of the State of Georgia, and it is hereby enacted by

authority of the same, that, from and after the first day of January next after the passage of this act, it shall not be lawful for any person, within the limits of this State, to sell or barter for valuable consideration, either directly or indirectly, *or keep* or furnish at any other public places, *or manufacture*, or keep on hand at their place of business any alcoholic, spirituous, malt, or intoxicating liquors or intoxicating bitters, or other drinks, which, if drunk to excess, will produce intoxication, and any person so offending shall be guilty of a misdemeanor, and shall be punished as prescribed in section 1039 of the Penal Code of Georgia. Nor shall it be lawful in the limits of said State for intoxicating liquors to be sold in dispensaries, and the sale of intoxicating liquors in said State shall be prohibited to private persons and to the State, its officers and agents. *Provided, that licensed druggists may sell and furnish pure alcohol for medical purposes only, upon written prescription of a regular practicing physician of this State, in the manner herein prescribed, to wit: before any physician shall issue any such prescription he shall make an actual examination of the person for whom the prescription is granted. The prescription shall be substantially in the following form: Georgia, . . . . . . . . . . . . . . County. I, . . . . . . . . . . . . . . ., a regular practicing physician under the laws of said State, do hereby prescribe for the use of . . . . . . . . . . . . ., a patient in my charge whom I have personally examined, . . . . . . . . . . of pure alcohol, and do certify in my opinion that the same is necessary in the alleviation or cure of illness from which said patient is suffering. This (date). (Signed by the physician). No prescription shall be filled hereunder except upon the day upon which it is dated and issued, or upon the following day. Within ten days after the same is filled by the druggist he shall file said prescription for record with the ordinary of the county in which filled, who shall cause the same to be recorded in his office, and a certified copy of the same or the original prescription showing it has been recorded shall be primary evidence in any court in this State. The record containing such prescription shall be open to public inspection. A recording fee of five cents for each prescription so recorded shall be paid by such druggist to the ordinary. Upon any prosecution under this act the burden of proving the defense that the sale was of pure alcohol, under prescription as herein provided for, shall be upon the defendant. Provided fur-*

*ther, no druggist who is a practicing physician shall fill his own prescription hereunder, nor shall they be filled by any drug-store in which said physician is financially interested, and no prescription shall be refilled; nor shall more than one pint be furnished on any one prescription.　The delivery of the alcohol under such prescription shall be made only directly to the person for whom such prescription is issued, or to the physician, or, in case of a minor, to his parent or guardian for him, or, in case of a married woman, to her husband for her.　Provided further, that nothing in this act shall be so construed as to prevent wholesale druggists from selling or furnishing alcohol in wholesale quantities to regular licensed retail druggists, or to public or charity hospitals, or to medical or pharmaceutical colleges.　Be it further provided, that all wholesale druggists shall be required to keep a complete record of all their sales of alcohol, which record shall at all times be open for inspection to the regular authorities of such counties or cities in which such wholesale stores are located.　Sec. 2.　Be it further enacted by the same authority, that any person, firm, or corporation who shall violate this act in any respect shall be guilty of a misdemeanor; any physician who shall issue a prescription hereunder containing any false statement shall be guilty of a misdemeanor; any druggist who shall fill any prescription for alcohol in anywise other than herein allowed, or who shall fail to file a prescription filled by him hereunder with the ordinary within the time prescribed, shall be guilty of a misdemeanor; any person who shall obtain alcohol for another in accordance with the terms hereof and who shall convert the same to any other use shall be guilty of a misdemeanor.　Sec. 3.　Be it further enacted by the authority aforesaid, that nothing in this act shall prohibit the sale by licensed druggists of wood or denatured alcohol for art, scientific, or mechanical purposes, or grain alcohol for bacteriologists, who are actually engaged in that class of work, for scientific purposes only.　Sec. 4.　Be it further enacted by the authority aforesaid, that all laws and parts of laws in conflict with this act be and the same are hereby repealed.'*

"On July 30th, 1907; the bill, as altered as above stated by the House, was passed by the House, by a vote of 139 to 39, which vote appears on the journal.　H. J. 592.　The differences between the two bills are: (1) The Senate bill made penal 'manufacture for the

purpose of sale,' leaving innocent and lawful the manufacture of any form of intoxicant for medical, social, domestic, or any other use not involving the element of gain. The House bill made it penal to 'manufacture' for any purpose whatever. (2) The Senate bill left it open to manufacture for export out of the State, so that fruit and grain could have been sold to our brewers and distillers who could have operated their plants for export purposes. The House bill annihilated this. (3) The Senate bill, while making it penal to 'furnish at any public place,' did not make it penal to 'keep' at such place. The House bill made it a substantive offense to 'keep' at any 'public place.' Under the former it would have been lawful to store liquor on hand in any public warehouse; under the latter such retention was made a crime. (4) The Senate bill allowed the sale of pure alcohol for medical use, annexing but one condition, namely, on written prescription by a reputable physician after examination of the patient. This done, any quantity necessary, in the judgment of the physician, could be furnished, any licensed druggist could fill the prescription, any person whomsoever could convey the medicament to the sufferer, and it was not required that the name of the sick person, the name of his or her physician, the name of his or her apothecary, and all the details of his or her prescription should be spread upon the public records. The House bill made the law do the prescribing, and not the attending physician. Not more than one pint could be furnished on any one prescription. If the vicinage had but one drugstore and the attending physician was owner of, or financially interested in that, then the prescription could not be filled at home but must be sent abroad. When the prescription was filled, the medicament could not be delivered to any one indifferently for transmission to the sufferer. A husband might receive it for his wife, or a parent or guardian for a minor, but in all other cases 'The delivery of alcohol under such prescription shall be made only directly to the person for whom such prescription is issued, or to the physician.' A son could not receive it for his father, or a wife for her husband, or a parent for his adult child. In short, save as to married women and minors the druggist or the doctor must convey it to the sick person, or else the sick person himself or herself must go for it or do without. When the prescription had been filled, all the details thereof were to be entered on the public

record 'open to public inspection.' (5) The House bill created fourteen (14) new offenses not known to the Senate bill, the same being as follows: to manufacture for any purpose other than for sale; to keep at any public place; to fill any prescription except upon the day of its issual [issuance] or the following day; to fail to file the prescription with the ordinary; for the ordinary to fail to record the same; for the druggist to fail to pay the ordinary his recording fee; for the physician, if also a druggist, to fill his own prescription; to fill the prescription at any drug-store in which the prescribing physician is financially interested; to refill any prescription; to furnish more than one pint on any one prescription; to deliver the medicament to any one but the sick person or the physician, the case of married women and minors only excepted; for wholesale druggists to sell alcohol to any hospital or private sanitariums; or to fail to keep a complete record of their sales; or to fail to keep such record open at all times to the inspection of the local authorities. (6) The Senate bill made an alleged illegal sale of alcohol triable as in other criminal cases; the House bill made it encumbent upon defendant to prove his innocence. As thus altered, the bill was taken up in the Senate on August 1, 1907, for a consideration of the same, and on pages 317-323 of the journal will be found all the proceedings had in the Senate thereon; and it does not appear that the bill, as altered by the House, or the alterations therein made by the House, received the votes of a majority of all the members elected to the Senate."

Was the plea in abatement properly stricken on the ground that it was insufficient in law?

*Anderson, Felder, Rountree & Wilson, Spencer R. Atkinson, Salem Dutcher,* and *William K. Miller,* for plaintiff in error.

*C. D. Hill,* solicitor-general, *Lowry Arnold,* solicitor, and *D. K. Johnston,* contra.

LUMPKIN, J. 1. Article 8, section 1, paragraph 1, of the constitution (Civil Code, § 5906), declares: "There shall be a thorough system of common schools for the education of children in the elementary branches of an English education only, as nearly uniform as practicable, the expenses of which shall be provided for by taxation, or otherwise." Section 3, paragraph 1, of the same article (Civil Code, § 5908) reads as follows: "The poll-tax, any educational fund now belonging to the State (except the endowment of,

and debt due to, the University of Georgia), a special tax on shows and exhibitions, and on the sale of spirituous and malt liquors, which the General Assembly is hereby authorized to assess, and the proceeds of any commutation tax for military service, and all taxes that may be assessed on such domestic animals as, from their nature and habits, are destructive to other property, are hereby set apart and devoted for the support of common schools." It was contended that it was mandatory upon the legislature to assess a specific tax on the sale of spirituous and malt liquors as one means of supporting such schools, and that this excluded the power of the legislature to prohibit the sale of such liquors. If the two paragraphs of the constitution quoted be fairly considered, they do not sustain the position. While that first cited declares that there shall be a thorough system of common schools for the education of children in the elementary branches of an English education, it states that the expenses shall be provided for "by taxation, or otherwise." The second of the sections declares, in effect, that any revenue derived from certain sources shall be set apart and devoted to the support of the common schools. It does not say that the legislature shall impose a tax on the sale of spirituous and malt liquors, but that it is authorized to do so. Several other items besides this tax are mentioned in the section. But it may well be doubted whether it was the intention of the constitution to make a mandatory provision as to them, so that the legislature must provide a commutation tax in lieu of military service, or must assess a tax on certain animals, for instance. In article 7, section 13, paragraph 1 (Civil Code, § 5900), the proceeds of the sale of the Western and Atlantic Railroad, "whenever the General Assembly may authorize the sale," are devoted to the payment of the bonded indebtedness of the State. But nobody would contend for a moment that the constitution intended to require the Western and Atlantic Railroad to be sold. Undoubtedly permissive words, such as "authorize," or "may," are sometimes construed as mandatory in effect, though permissive in form, as for instance where a statute provides for the doing of some act which is required by justice, or public duty. But where the language employed, together with its context, shows that the constitutional or statutory provision under consideration conferred or recognized a discretionary power, a mandatory construction will not be given to it. In the present case, if a tax were assessed on the

sale of spirituous and malt liquors, there would be no discretion on the part of the legislature as to what should be done with the proceeds. They would be devoted to the support of the common schools. But, construing this provision in the light of its context, and of other provisions of the same instrument, it does not command the legislature to tax the sale of spirituous and malt liquors, and impliedly deny to them the power to prohibit such sale. In paragraph 22, section 7, article 3 of the constitution (Civil Code, § 5784), it is declared that "The General Assembly shall have power to make all laws and ordinances consistent with this constitution, and not repugnant to the constitution of the United States, which they shall deem necessary and proper for the welfare of the State." The police power is recognized in this and in other sections of the constitution, notably in paragraph 3, section 2, article 4 (Civil Code, § 5798), where, among other things, it is declared that "The exercise of the police power of the State shall never be abridged, nor so construed as to permit corporations to conduct their business in such a manner as to infringe the equal rights of individuals, or the general well-being of the State." The sale of spirituous and malt liquors has from early times been considered as falling peculiarly within the cognizance of the police power of the State. In *Perdue v. Ellis,* 18 *Ga.* 586, it was said that "The General Assembly have the right, should the general public good require it, and public opinion demand it, to pass a law to restrict or even suppress the internal traffic in spirits." In *Howell v. State,* 71 *Ga.* 224, 228 (51 Am. R. 259), Hall, J., said: "Undoubtedly the legislature had the power to make this inhibition general, and, having this power, it would seem that they might confine it to certain special localities." In *Menken v. City of Atlanta,* 78 *Ga.* 668, 672 (2 S. E. 559), the local option legislation then in force, by which the sale of liquors could be prohibited in counties by popular vote, was held to be constitutional as a valid exercise of the police power. Chief Justice Bleckley said: "If it has not been heretofore sufficiently decided, we decide now that the local option legislation of this State is constitutional as a valid exercise of the police power. Historically considered, there is no subject more completely amenable to this power than the sale of intoxicating liquors." This decision was rendered after the adoption of the present constitution. In *Ison v. Mayor and Council of Griffin,* 98 *Ga.* 623 (25 S. E. 611),

it was said that a license to sell spirituous liquors was neither a contract nor a property right in the licensee, but a mere permit to do what would otherwise be an offense against the general law, and when granted by a municipal corporation it was subject at all times to the police power of that corporation; and that, in the absence of any restriction upon its authority, the municipality could revoke such license. In *Plumb* v. *Christie,* 103 *Ga.* 686, 694 (30 S. E. 759, 42 L. R. A. 181), Mr. Justice Lewis said: "No principle is more universally recognized by the courts than the right of a State, under general police powers reserved and granted to its legislature, to control the traffic in any commodity the use of which may endanger either the public health or morals. It is equally well established that the sale of intoxicating liquors is peculiarly, on account of the evil effects resulting from their use, subject to legislative control and regulation. To such an extent can this power be exercised, that an absolute prohibition of the sale of this commodity throughout a State can be accomplished by an act of its legislature, and, among the number of cases reviewing such legislation, our attention has never been called to a single case in a court of last resort where the validity and constitutionality of such an act has not been upheld." In *Henderson* v. *Heyward,* 109 *Ga.* 373, 376 (34 S. E. 590, 47 L. R. A. 366, 77 Am. St. R. 384), Mr. Justice Cobb said: "That the State has a right to prohibit absolutely the sale of whisky is no longer an open question, either in this court or in the Supreme Court of the United States."

It is true that in none of these decisions were the paragraphs of the constitution now invoked directly considered; but most of them were rendered after.the adoption of the present constitution, and they all considered the legislature as having the authority to prohibit the sale of spirituous or malt liquors, under the general police power of the State. We hold that the constitutional provisions in regard to the maintenance of a common-school system, and the appropriation of any amounts which might arise from certain sources to its support, did not prevent the legislature from exercising its police power in regard to spirituous or malt liquors, or render the prohibition law of 1907 unconstitutional on that ground.

It was sought to differentiate the local option law and local prohibition laws from the general prohibition law, in respect of the matter now under consideration. But we think the differentiation

sought to be made is unsound. Article 3, section 7, paragraph 16 (Civil Code, § 5778), was cited as indicating a difference. That paragraph requires publication of notice of intention to apply for a local or special law prior to the introduction of a bill in the General Assembly. It has no relevancy to the question now before us.

2. By article 1, section 5, paragraph 2, of the constitution, it is declared: "The enumeration of rights herein contained as a part of this constitution shall not be construed to deny to the people any inherent rights which they may have hitherto enjoyed." It was contended that prior to the time when the constitution of 1877 was adopted the people of the State had enjoyed, as an inherent right, the right to make, sell, barter, give away, keep, and furnish any of such liquors, subject only to sundry statutory regulations, and that the intent and effect of the section just quoted was to inhibit the General Assembly from denying such alleged right. The point is without merit. What has been said in the previous division of this opinion answers it. We need only add that in *Loeb* v. *Jennings,* 133 *Ga.* 796 (67 S. E. 101), it was claimed that the prohibition law violated the provision of the constitution of the United States which declares that no State shall make or enforce any law which shall abridge the privileges or immunities of the citizens of the United States. In dealing with that contention it was said: "There is no constitutional privilege or immunity in any citizen of this State or of any other State to come within its borders and violate its laws in regard to prohibiting the sale of intoxicating liquors."

3. Article 3, section 7, paragraph 8, of the constitution (Civil Code, § 5771), provides: "No law or ordinance shall pass which refers to more than one subject-matter," etc. It was argued that the act of 1907 was violative of this provision, because it prohibited both the sale and manufacture of various liquors mentioned in it, and that sale and manufacture are two separate and distinct subject-matters. The question of what constitutes duality of subject-matters has been so frequently discussed by this court that it would serve no good purpose to repeat what has been said. Of course selling an article is not identical with its manufacture. Neither is malt liquor identical with distilled liquor. Nor yet is giving away liquor to induce trade the same thing as furnishing it at public places. But all of these things were germane to and formed a part of the general purpose of the act. They were not so entirely

distinct and different as to constitute different subject-matters within the meaning of the paragraph of the constitution last quoted. In 26 Am. & Eng. Enc. Law, 575, occurs this statement: "The word 'subject' as used in the constitutions is not to be taken as synonymous with 'provision'; an act may properly include any number of provisions so long as they are not inconsistent with or foreign to its general object. This requirement of singleness of subject is not intended to embarrass honest legislation, but only to prevent the vicious practice of joining in one act incongruous and unrelated matters; and if all the parts of a statute have a natural connection and reasonably relate, directly or indirectly, to one general and legitimate subject of legislation, the act is not open to the objection of plurality, no matter how extensively or minutely it deals with the details looking to the accomplishment of the main legislative purpose."

4. By article 3, section 7, paragraph 14, of the constitution, it is provided that "No bill shall become a law unless it shall have received a majority of the votes of all the members elected to each house of the. General Assembly, and it shall, in every instance, so appear on the journal." It was urged, that the legislative journals showed that a bill to prohibit the sale of liquors, etc., was introduced into the Senate and was passed by a majority of that body; that this bill was amended by the House of Representatives in a number of material particulars, and as so altered was passed by the House by a vote of a majority of the members of that body; that it appeared from the journal of the Senate that, after the bill was returned to that body several amendments were offered and rejected; and that the Senate journal, showing the concurrence in the amendments originating in the House of Representatives and the final action on the bill, did not show that it received the votes of a majority of all the members elected to the Senate. The question thus raised is controlled by the decision in *DeLoach* v. *Newton,* ante, 739 (68 S. E. 708). The plea in abatement filed by the defendant, in which he set up this contention, was properly stricken. The accusation was not subject to the objections set out in the questions certified to this court.     *All the Justices concur.*