CAPITOL DISTRIBUTING COMPANY *et al v.* REDWINE,
Revenue Commissioner; *et vice versa.*

478

Nos. 16887, 16901. January 12, 1950. Rehearing denied February 17, 24, 1950.

*MacDougald, Troutman, Sams & Schroder,* and *Dan Mac-Dougald Jr.,* for plaintiffs.

*Eugene Cook, Attorney-General,* and *M. H. Blackshear Jr., Assistant Attorney-General,* for defendant.

CANDLER, Justice. (After stating the foregoing facts.) ■ There is set out above a copy of the enrolled act as attached to and made a part of the petition as amended. As enrolled the act shows on its face that taxation on wines is included in the title and in the body. The plaintiffs in error contend that there were irregularities during the process of the legislation such as to controvert any valid reference to wines in the title. A portion of the petition as amended alleges in substance that the words, "to increase the excise taxes upon domestice wines, foreign wines, and domestic and foreign fortified wines," were neither read before nor voted on by the legislature nor did they appear in the title when the bill was before the legislature. Instead, it is contended that those words were composed and inserted by some agency or method other than the joint action of the two houses after the bill was voted on and passed. Further, it is contended that the words, "and that the caption be amended accordingly," were written underneath the body of the amendment, but that the same were not constitutionally sufficient to authorize the first above-quoted words which were written into the title. The petition as amended attempts to show the facts relied on by photostatic copies of the bill, its amendment during process of passage, and Legislative Journal entries. Involved in these contentions there are several provisions of the

State Constitution, alleged to be violated, as follows: article III, section 1, paragraph 1 (Code, Ann. § 2-1301), reading: "The legislative power of the State shall be vested in a General Assembly which shall consist of a Senate and House of Representatives," the contention being that the alleged new matter inserted in the manner alleged constitutes an unlawful delegation of legislative authority in violation thereof; article III, section VII, paragraph VII (Code, Ann. § 2-1907), reading: "Every bill, before it shall pass, shall be read three times, and on three separate days, in each House, unless in cases of actual invasion, or insurrection, but the first and second reading of each local bill, shall consist of the reading of the title only, unless said bill is ordered to be engrossed," it being contended that, the entire act not being read, this clause was violated; article III, section VII, paragraph VIII (Code, Ann. § 2-1908), reading: "No law shall pass which refers to more than one subject matter, or contains matter different from what is expressed in the title thereof," the contention in this connection being that the act having made reference in the body to wines, without having reference to the same in the title, is in violation of this provision; and article I, section I, paragraph III (Code, Ann. § 2-103), reading: "No person shall be deprived of life, liberty, or property, except by due process of law," it being contended that the legislature undertook to have the caption changed after the act passed and did so in terms so vague, uncertain, and indefinite as not to apprise anyone thereof.

Before a determination of the questions above presented, it is obvious that consideration must be given to the effect thereon of the decisions of this court on the principle commonly known as the conclusive presumption of an enrolled act. In *Atlantic Coast Line R. Co.* v. *State*, 135 *Ga.* 545 (69 S. E. 725), it was held: "A duly enrolled act properly authenticated by the regular presiding officers of both houses of the General Assembly, approved by the Governor, and deposited with the Secretary of State as an existing law, will be conclusively presumed to have been enacted in accordance with the constitutional requirements; and it is not permissible to show, by the legislative journals or other records, that it did not receive on its passage a majority vote of all the members elected to each house, or that there was

any irregularity in its enactment." See also *DeLoach* v. *Newton*, 134 *Ga.* 739 (68 S. E. 708), and *Williams* v. *MacFeeley*, 186 *Ga.* 145 (197 S. E. 225). A case cited and relied on by the plaintiffs in error is *Solomon* v. *Commissioners of Cartersville*, 41 *Ga.* 157. It held that an act of the General Assembly signed by Rufus B. Bullock, Governor, May 26, 1869, was invalid because it was not signed within the time prescribed by the Constitution. The *Solomon* case, supra, was cited in *DeLoach* v. *Newton*, supra, and the court, after discussing the possible uses of the legislative journals, said: "A possible use for them might arise on the construction of an act. In *Solomon* v. *Commissioners of Cartersville*, 41 *Ga.* 157, the journals of the General Assembly were consulted to ascertain when the legislature adjourned. In *Gormley* v. *Taylor*, 44 *Ga.* 76, a query was put on this subject." Evidently the court in *DeLoach* v. *Newton*, supra, did not consider the case of *Solomon* v. *Commissioners of Cartersville*, supra, any obstacle to reaching its decision. Neither do we, in this case, find anything in it to prevent us from following *DeLoach* v. *Newton*, *Atlantic Coast Line R. Co.* v. *State*, and *Williams* v. *MacFeeley* (supra), in circumstances where, as in the present case, the attempt is to impeach a legislative act in reference to matters alleged to have transpired before the signing of the bill by the Governor, and where the issue is not whether or not the Governor did actually sign the bill within the time required by the Constitution. The plaintiffs in error argue that the decided cases in this State on the question of conclusive presumption of an enrolled act do not, as to any of them, embrace a situation exactly like that presented by the facts in the instant case. If not in exact detail with the facts here involved, the principles in the cited cases upholding the conclusive presumption doctrine are sufficiently controlling for us to adhere to the same rule in this case. Thus, we reach the conclusion that where, as in this case, a copy of an enrolled act purporting to contain the signatures of the Speaker of the House, Clerk of the House, President of the Senate, Secretary of the Senate, and the Governor, is set out and made a part of the amended petition, which seeks to show invalidity upon the contention that a portion of the title was composed and inserted by some method or agency in an irregular manner during the process of its passage, neither the

legislative journals nor photostatic copies of the bill are permissible to impeach the act, because of the conclusive presumption against any irregularity in its enactment; and, accordingly, this court cannot consider violations of the State Constitution that are dependent on being so shown.

■ The act is assailed as being in violation of article III, section VII, paragraph VIII of the State Constitution (Code, Ann. § 2-1908), particularly the portion thereof reading, "No law shall pass which refers to more than one subject matter," because, as the plaintiffs in error contend, it embraces legislation on "malt beverages" and "wines." Specifically it is contended that the regulation, control, and taxation of malt beverages is a separate subject-matter from that of wines. Seeking to illustrate, it is insisted that they have been dealt with as a separate series of legislation; that in certain court decisions the term "malt beverages" has been held not to include "wines"; that legislative declarations in the wine act of 1935, to the effect that the same was to promote temperance and prosperity of the people of Georgia and foster the growing of grapes, fruits, and berries on Georgia farms, indicate that wines are recognized by the legislature as being in a different subject-matter category from that of malt beverages; and that executive and administrative treatment has recognized them as separate. The "subject" of an act, within the meaning of the constitutional provision that no act shall contain more than one subject, is regarded as the matter or thing forming the groundwork of the act. *Lloyd* v. *Richardson*, 158 *Ga.* 633 (124 S. E. 37); 50 Am. Jur. 172, § 191; *Mayes* v. *Daniel*, 186 *Ga.* 345, 353 (198 S. E. 535). In *Whitley* v. *State*, 134 *Ga.* 758 (68 S. E. 716), involving an act of 1907 to prohibit the manufacture, sale, and other things relating to various named forms of alcoholic liquors or drinks, the dual subject-matter provision of the State Constitution was invoked and held not to be applicable, it being pointed out that "all these things were germane to and formed a part of the general purpose of the act. They were not so entirely distinct and different as to constitute different subject-matters within the meaning of the paragraph of the constitution." See also *Carroll* v. *Wright*, 131 *Ga.* 728 (63 S. E. 260). Looking to the language of the act in the instant case, the general purpose is illustrated by words and figures

that unmistakably stand out as indicating that an increase in excise taxes is the thing chiefly sought. Whatever may have been the reasons prompting the legislature in the year 1935 to deal separately with malt beverages (Ga. L. 1935, pp. 73-81) and wines (Ga. L. 1935, pp. 492-4), or amending the same separately afterwards, it does not appear to us that the terms, "malt beverages" and "wines" are so incongruous per se that they could not be dealt with in a single act for a purpose that was applicable. Although the original wine act of 1935 legalized the making of domestic wines and exempted from taxation wine made from Georgia grapes, fruits, and berries, the tax-free provision was eliminated by an act approved March 30, 1937 (Ga. L. 1937, p. 851), and a tax was prescribed to be levied and collected on domestic wines and foreign wines graduated on alcoholic content. Since that time the amended act has contained levies of taxes upon wines of all classes, and the original theory of tax exemption on wine made from Georgia grapes, fruits, and berries has no longer obtained. It is true that the levies against wines made from Georgia products have been at a lower rate than other wines. Rationally, however, the declarations in the original wine act of 1935, to the effect that promotion of temperance and prosperity for Georgia people and to foster and encourage the growing of grapes, fruits, and berries in Georgia, were more in harmony with the act when it first legalized domestic wines with a limited alcoholic content, without taxes, than now apply since the amendments letting in foreign as well as domestic wines and permitting an increased alcoholic content. The question in *McKown* v. *Atlanta*, 184 *Ga.* 221 (190 S. E. 571), and *McCaffrey* v. *State*, 183 *Ga.* 827 (189 S. E. 825), was whether a law or ordinance pertaining to "malt beverages" comprehended "wines" within that term. No such issue is involved here, and those cases are not applicable. In view of the foregoing, the act now under consideration does not contain a dual subject-matter within the meaning of the constitutional provision that no act shall contain more than one subject.

■ The plaintiffs in error contend that section 2-a of the act unconstitutionally discriminates against them, in that a tax of $1 per gallon is levied on wine manufactured in Georgia from out-of-State grapes as against a ten-cents-per-gallon levy on

wine of the same class manufactured from Georgia raw materials. The constitutional provisions alleged to be violated are as follows: denial of due process and equal protection as guaranteed by the Fourteenth Amendment to the Constitution of the United States, especially that portion thereof reading, "nor shall any State deprive any person of life, liberty or property without due process of law; nor deny any person within its jurisdiction the equal protection of the laws"; and burdening interstate commerce, as forbidden by article 1, section 8, paragraph 3, especially the portion reading: "The Congress shall have Power. . . To regulate commerce . . among the several States." It is insisted that the definition of foreign wines, making applicable the taxation, illustrates the unconstitutionality claimed. The definition reads: "Foreign wines are hereby defined and declared to be wines which are imported in whole or in part in the State of Georgia or manufactured in the State of Georgia from products imported in whole or in part from without the State and produced by natural fermentation." The United States Supreme Court has held in State Board of Equalization v. Young's Market Co., 299 U. S. 57 (57 Sup. Ct. 77, 81 L. ed. 38), Mahoney v. Joseph Triner Corp., 304 U. S. 401 (58 Sup. Ct. 952, 82 L. ed. 1424), and Indianapolis Brewing Co. v. Liquor Control Commission of the State of Michigan, 305 U. S. 391 (59 Sup. Ct. 254, 83 L. ed. 243), that the Twenty-first Amendment to the Constitution of the United States renders inoperative asserted violations of such provisions as due process, equal protection, and interstate commerce, where State action within the subject-matter of the Twenty-first Amendment is involved. Beer and beer dealers were involved in the alleged discrimination in the Indianapolis Brewing Co. case, supra.

Upon the basis of the Twenty-first Amendment to the Constitution of the United States, this court in *Scott* v. *State,* 187 *Ga.* 702 (2 S. E. 2d, 65), held that a statute imposing a tax on distilled spirits imported into the State and making it a misdemeanor to possess unstamped liquor did not violate the commerce clause of the Federal Constitution on the ground that it prohibited purchase of distilled spirits outside of the State for the purchaser's own use. The plaintiffs in error cite U. S. v. Frankfort Distilleries, 324 U. S. 293 (65 Sup. Ct. 661, 89 L. ed. 951),

and Jatros v. Bowles, 143 Fed. 2d, 453, and claim the same as authority for their contention that the Twenty-first Amendment does not immunize the portion of the act involved from the effect of the commerce clause. The Frankfort Distilleries case, supra, involved an alleged conspiracy in fixing prices in violation of the Sherman Act, and it was pointed out that it was not being enforced in that case in such manner as to conflict with the law of Colorado. Jatros v. Bowles, supra, involved Emergency War Price controls which rested under the war powers. Neither of the two last-mentioned cases conflicts with the right of the State's authority to determine conditions upon which liquor can come into its territory and what will be done with it after it gets there. Therefore, they are not applicable to the question here. *Mason v. State*, 1 *Ga. App.* 534 (5) (58 S. E. 139), holds that "wine" is included in the definition of the term "intoxicating liquors." The Twenty-first Amendment embraces "wine" such as is the subject-matter dealt with in the portion of the act under attack in this case. If the portion of the act is discriminatory, it is outside the pale of protection of the due-process and equal-protection clauses of the Fourteenth Amendment and the commerce clause of the Federal Constitution by reason of the Twenty-first Amendment thereof. Therefore, we cannot consider the grounds of discrimination and unconstitutionality which are raised by the plaintiffs in error and discussed in this division of the opinion.

(a) Likewise, there is no merit in the contention here made that section 2-a of the act of 1949 (Ga. L. 1949, Ex. Sess. p. 5) offends article 1, section 1, paragraph 2 of the Constitution of 1945 (Code, Ann., § 2-102), which declares "Protection to person and property is the paramount duty of government, and shall be impartial and complete."

In view of the above rulings, there was no error in sustaining the general demurrers, which attacked the petition as amended on grounds that no cause of action was set out, nor did the allegations warrant the granting of the equitable relief prayed. Because of said rulings on these general demurrers, it becomes unnecessary to pass on the special demurrers brought up by the cross-bill of exceptions.

*Judgment affirmed on the main bill of exceptions. All the*

*Justices concur, except Wyatt and Head, JJ., who dissent from division 2 of the opinion and the judgment of affirmance, Duckworth, C. J., and Almand J., concur specially. Cross-bill of exceptions dismissed. All the Justices concur.*

ALMAND, Justice. I concur in the ruling in division 1 of the opinion only because of prior unanimous decisions of this court, cited in the opinion. I think that these previous decisions are wrong and should be overruled, but since a sufficient number of members of the present court to overrule these cases do not agree with me, I am bound by these prior rulings. I am authorized to say that Chief Justice Duckworth concurs in this special concurrence.