WILLIAM P. RUSSELL *v.* DAVID SLOAN.

*Intoxicating Liquors.*

The act prohibiting traffic in intoxicating drinks does not apply to medicinal preparations in which alcohol is used in quantities capable of producing intoxication, such as bitters, tinctures, etc., which are in good faith made and sold for medicinal purposes.

But *aliter* with intoxicating liquors intended to be sold and used as a beverage, though disguised by some tincture or preparation, so as to have, to some extent, the taste, flavor or appearance of medicines.

BOOK ACCOUNT. The question in this case was whether the plaintiff, who was a druggist, was entitled to recover of the defendant for a quantity of an article called " Doctor Ham's Aromatic Invigorating Spirit," which the plaintiff had sold and delivered to the defendant.

The auditor reported that this article is one commonly on sale by druggists throughout the country ; that it properly comes under the denomination of a quack medicine ; that in some instances it is a valuable tonic when used according to the directions attached to each bottle, and given below ; that it contained about twenty per cent. of alcohol, ten per cent. being sufficient to preserve vegetable bitters, and that it would intoxicate when drank in sufficient quantities.

The following are the directions for its use, attached to each bottle of the article:

" Dr. Ham's Aromatic Invigorating Spirit, prepared for the New York Medical Health Company, by Darius Ham, M. D. *Directions for use*—For Dyspepsia, Indigestion, Liver Complaint, Kidney Complaint, Urethra Difficulties, one wine glass full four times a day, half an hour after eating and on going to bed.  Bad Spirits, Melancholy, Headache, Billiousness, Wind in the Stomach, or Cholic, Pains in the Bowels, a wine glass full whenever these symptoms appear.  Heart Burn, Bad Taste in the Mouth, Craving for Unnatural Food, or a desire for Intoxicating Drinks, a wine glass full whenever these symptoms appear.  Nervousness, Weakness, Lassitude, Drowsiness, Restlessness, Unable to Sleep at Nights, Fearful Dreams, etc., take a wine glass on going to bed at night, and once or twice during the day, if any disagreeable symptoms appear.  Female Difficulties, Irregularities, Stoppages of the Monthly Courses, Difficult Menstruation, Headache, Giddiness, etc., a wine glass of the Spirit three times per day, half an hour before eating and on going to bed at night.  For all the above complaints, if the directions are properly observed, the patient may rely upon a cure in a day or two.  *Price* One Dollar per bottle.  Prepared and sold wholesale by Dr. Darius Ham, No. 48 Water Street, N. Y."

The auditor reported that if the plaintiff was entitled to recover for this article, he found a balance due him of thirty-five dollars and sixty-eight cents.

Upon this report the county court, at the June Term, 1860,— PIERPOINT, J., presiding,—held that the plaintiff was not entitled to recover, to which the plaintiff excepted.

*J. W. Stewart*, for the plaintiff.

*Roberts & Chittenden*, for the defendant.

ALDIS, J.  The object of our statutes regulating the sale of intoxicating liquors is to prevent the use of such liquors as a beverage, and thus to check, and if possible, to extirpate the evils of intemperance.  Hence these statutes are intended to apply to

42

all intoxicating liquors, which would be resorted to to gratify the appetite for intoxicating drink.

But there is a large class of medicines, bitters and tinctures, used not as beverages, but as medicinal remedies, to which it is quite obvious that these statutes were not intended to apply, although such articles are composed in part of alcohol, and if used in sufficient quantities will produce intoxication. Such articles are usually kept by druggists, and are manufactured in good faith as medicines. They are not intended for, and are not used as a drink. Some of them are approved of and recommended by learned and skillful physicians. They vary greatly in their preparation, in the amount of alcohol used in them, and in their qualities. Many of them are believed to be useful in the cure of diseases ; many of them are probably worthless or mischievous. Many mixtures of this sort pass under the title of patent or quack medicines, which the auditor finds the preparation here in question to be. But the law makes no distinction in regard to the manufacture, use and sale of medicines upon the ground that they are or are not the products of quackery. Many quack medicines have a great reputation for curing diseases and find a great sale.

To prohibit the sale of these articles for their legitimate and real use as remedies for disease was not within the object of our legislation in regard to intoxicating liquors. It would be, we think, a narrow construction of these statutes, a mere following of the letter, without regard to the spirit and object of the law, to hold that the words " intoxicating liquors " should include medicines or medicinal preparations when alcohol is used in them in quantities capable of producing intoxication. The practical operation of the statute thus expounded would interfere with the practice of medicine by physicians, and with that freedom in the choice and use of remedies for disease which every one is entitled to. In practice it would be intolerable if attempted to be enforced.

These were not the objects aimed at by the statutes. Wine, brandy, rum, etc., are permitted to be sold as medicines. When, therefore, these medicines, bitters, and tinctures are made and sold in good faith for their true and legitimate use, to prevent or

cure disease, we cannot regard them as within the class of intoxicating liquors whose sale is prohibited or regulated by law.

But when intoxicating drinks, intended to be sold and used as a beverage, are by some tincture or preparation slightly disguised so as to have to some extent the taste, flavor or appearance of medicines or bitters, when in fact they are really meant to be sold and used as intoxicating drinks, such mixtures, however disguised, are within the prohibition of the law. When medicinal names or other plausible and popular titles are used to disguise and cover up the sale of intoxicating drinks as a beverage, it is clear that the articles thus sold are none the less within the class of intoxicating drinks prohibited by the statute, because they seek to avoid the penalties by the use of a specious and fair-sounding name.

In all such cases it is a question not of law but of fact, whether the pretended medicine is in reality and in good faith made, sold and used as a medicine, or is only a disguise for intoxicating liquor. This question must be determined upon the evidence. The composition and character of the article, the amount of alcohol in it, and whether it does readily or with difficulty produce intoxication, whether it is agreeable or nauseous to the taste, whether it is useful or not as a medicine to cure disease, whether it is generally kept and sold by druggists as a medicine, whether it is frequently resorted to and used as a beverage, these and similar circumstances would be regarded as evidence tending to determine the question.

In the case at bar the auditor finds the article called " Dr. Ham's Aromatic Invigorating Spirit " is a quack medicine, usually kept by druggists, and in some cases a valuable tonic. It contains twenty per cent. of alcohol. It is advertised as a medicine, and the advertisement is appended to the report. The auditor finds that about ten per cent. of alcohol will preserve vegetable bitters. He does not expressly say that this is a vegetable bitter, but we think that to be his meaning.

The auditor does not find the fact that it is a disguise for intoxicating drink, or that it is not in good faith what it purports to be — a medicine.

To subject the plaintiff to a forfeiture of the value of this

article sold to the defendant, it must appear affirmatively that it is an intoxicating drink, attempted to be disguised and sold as a medicine. The presumption of law is that it is what it purports to be — a medicine. *Prima facie* it is a medicine ; the burden of proof is on the defendant to show that it is not, that it is an intoxicating drink ; and until that fact appears from the report of the auditor, we can not say that it exists.

The amount of alcohol—twenty per cent.—does not necessarily prove that it is not a medicine. Preparations of medicine differ greatly in the amount of alcohol used in them. This circumstance tended to show that it might be a beverage merely, and was for the auditor to weigh.

The language of the advertisement, recommending a wine glass full to be used when a desire for intoxicating liquor is felt, is also a suspicious circumstance, but not conclusive as matter of law, though doubtless of weight in deciding upon the fact. Other circumstances stated by the auditor tend to show that it is not intended for an intoxicating beverage, but that it is really a medicine. Indeed we think the fair construction of the auditor's report is, that he finds it to be a quack medicine.

As it does not appear from the report that the article sold by the plaintiff to the defendant is an intoxicating liquor intended for a beverage, but disguised and called as a medicine, we are not at liberty to find it other than what it purports to be, viz : a quack medicine. As such its sale is not prohibited by law.

The judgment, therefore, must be for the plaintiff to recover the larger sum of thirty-five dollars and sixty-eight cents and interest.