TOM PEARCE v. THE STATE.

No. 3046.  Decided June 7, 1905.

**Local Option—Kidney Specific—Medical Compound—Charges Refused.**

Where the evidence, in a trial for a violation of the local option law, tended to show that the alleged intoxicant was a medical compound with only sufficient amount of gin included to preserve it, or extract the properties from the ingredients, and was not usually sold as a beverage but as a medicine, it would not be violative of the local option statute to sell it, and the jury should have been given some criterion by which this question could have been decided by them, and it was therefore error to refuse the special charges submitting this issue.

Appeal from the County Court of Comanche. Tried below before Hon. J. H. McMillan.

Appeal from a conviction of a violation of the local option law; penalty, a fine of $25 and twenty days confinement in the county jail.

The opinion states the case.

No brief for appellant has reached the reporter,

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—This is a local option conviction. The State's case disclosed that the alleged purchaser secured from appellant, a clerk in the drug store of Dr. Daniel, a bottle of a preparation called "Kidney Specific," that later on he bought two other bottles, one for Walter Johnson and the other for Charley Johnson; that he drank about one and one-half bottles of this specific. "It made me drunk, but it did not affect me exactly like whisky. It did not look, taste or smell like whisky. It did not make my tongue thick like whisky does. I have been drunk on intoxicating liquor, and know its effects. I do not remember drinking any whisky that day." Odell was also introduced for the State. He says, he was in the photograph gallery, where he saw the purchaser, Fant; and that Fant was

drunk; saw him drink something from a bottle which he took to be whisky. It looked like whisky. "I have seen the Kidney Specific, and the liquor he drank from the bottle did not look to me like Kidney Specific. I do not know where the whisky came from or how much of it Fant had drank, as Fant and the whisky were both up there when I went. He appeared to be out of fix before he drank the whisky."

Defendant's evidence discloses that witness Johnson furnished Fant 50 cents for the purpose of purchasing a bottle of Kidney Specific, which was afterwards used by them. At the time he gave Fant the 50 cents Fant appeared to be drunk. Later in the morning I was upstairs at Mr. Parks' photograph gallery, and saw Walter Fant drink some whisky. The Kidney Specific does not taste nor smell like whisky. I drank about one-half bottle. This did not have any effect on me." Parks testified that he was familiar with the preparation called 'Kidney Specific'; that he had used it as a beverage; Kidney Specific does not look, taste, or smell like any intoxicant. "It does not affect me at all, or like any intoxicant; I have drunk as much as one bottle, or a pint, at a time, and did not experience any effect from it." Nelson testified that he was a drummer and had been following that business for twelve years—ten of which he had sold drugs in Comanche County; that he sold a large number of proprietary and patent medicines, among those the Kidney Specific; that he sold this medicine to Dr. Daniel; that he had been selling it for ten years in Comanche County, and long prior to the time local option law became operative in that county. He says that he had sold as much or more of it before local option was operative than since; that he was familiar with the preparation; that it was not at all like an intoxicant. It did not look, taste nor smell like an intoxicant; that he had used it as a medicine, and never experienced any intoxicating effect. Dr. Daniel testified that he carried this Kidney Specific in his stock and had been treating Fant for a relapse of mumps; that on Friday before this sale occurred, he had told Fant to send to the drug store and get a bottle of medicine which he would prepare; that he prescribed a bottle of this medicine, and in addition added a little nitre to the Specific, and had it set aside for him. It is shown by this witness, as well as defendant, on his examination, that when Fant came to the drug store this particular bottle was given him. Dr. Daniel further testified that he used this Specific in his general practice as a kidney tonic, for both man and woman, and has always found it to be an excellent tonic; that he was familiar with the nature of the preparation and its ingredients; that it contains turpentine, juniper berries, spirits of nitre, and other drugs, with equal parts of gin and water: having only a sufficient amount of gin to preserve the drugs and not enough to intoxicate; that a man could not ordinarily drink enough of it to be intoxicated by the gin it contained; that before the gin would affect a man he would be nauseated and in a sense made crazy and drunk on the other ingredients it contained. Defendant testified in his own behalf that he let Fant

have the bottle in question under the direction of his principal, Dr. Daniel; and he also testified that the preparation did not smell, taste, nor look like an intoxicant.

This is in brief the substance of the testimony.

The court charged the jury on the defensive theories, that any liquor capable of being used as a beverage, containing sufficient alcohol to produce intoxication when drunk in practical quantities is an intoxicating liquor, and the jury should not convict, unless they should find from the testimony that the liquor sold was an intoxicating liquor, as defined. He further charged: Another defense relied on by defendant was that, if it was an intoxicating liquor and he (defendant) did not know it; and that if the jury should believe it was an intoxicating liquor, but that defendant at the time he sold it, believed in good faith that it was not intoxicating liquor, and without reason to believe it was intoxicating liquor, sold it, they would acquit. Exception was reserved. to the charges. Special instructions were requested, submitting not only a definition as to what intoxicating liquor is, in accordance with the previous decisions of this court, but he contends that the charge here given did not meet the issues made by the testimony. Among other special charges refused, is, the following: "You are further charged, as a part of the law of this case, if you find the liquor sold was a medical preparation and was not an intoxicating liquor when drank in such quantities as could be practically drank, you will find the defendant not guilty." And again: "You are further charged as a part of the law of this case, that if the liquor sold contained various drugs as ingredients, and that a person taking same in such quantities as could be practically drank, would be influenced by the same or made drunk, but that such effect or drunk produced by the preparation was the result of the drugs so contained in same, and was not the result of any intoxicating liquor so contained in said preparation, you will find the defendant not guilty." We believe that, under the facts, these charges should have been given. The rule in regard to matters of this sort is well stated in volume 17, American and English Encyclopedia of Law, volume 204. "It has been held that whatever is generally and popularly known as medicine or an article for the toilet, recognized and the formula of its preparation prescribed in the United States Dispensatory or like standard authority, and not among the liquors ordinarily used as intoxicating beverages, such as tincture of gentian, paregoric, bay rum, cologne, etc., is not an *intoxicating* liquor within the meaning of the statutes regulating and prohibiting the traffic in intoxicating liquors, and the courts may so declare as a matter of law, notwithstanding such articles contain alcohol and may produce intoxication. * * * If the compound or preparation be such that the distinctive character and effects of intoxicating liquors are gone, and its use as a beverage is rendered undesirable or practically impossible by reason of the other ingredients, and the liquor is used merely as a vehicle for or preservation of the other ingredients, or to extract their

virtues and hold them in solution, the article will not be within the prohibition of the statute, although its use may produce intoxication. On the other hand, if the liquor is the predominant ingredient, and sufficiently retains its intoxicating qualities to render the mixture reasonably susceptible of use as a beverage, it is within the prohibition of the statute. The laws cannot be evaded by disguising intoxicating liquors sold as a beverage with some tincture or preparation which will give to the liquor to some extent, the flavor or appearance of medicine, or by mixing with the liquor drugs, barks, or seeds which have medicinal qualities." In regard to the question of evidence the same text says, "The composition and character of the article and the amount of alcohol in it; whether it does readily or with difficulty produce intoxication; whether it is agreeable or nauseous to the taste; whether it is used or not used as a medicine to cure disease; whether it is generally kept and sold by druggists as a medicine; whether it is frequently resorted to and used as a beverage, are competent matters to be given in evidence to determine whether the article sold is or is not within the prohibition of the statute."

Under the facts of this case it is a very serious question, and the preponderance of the evidence would seem to indicate that Fant was intoxicated, not from the Kidney Specific bought of appellant, but from the use of whisky. The State's main point of proving the intoxicating properties of this compound is found in the fact that Fant was intoxicated. If he became so from the whisky used, either before or after drinking the specific, or in connection with it, it might be a serious question as to whether or not the intoxicating properties of the "Specific" were shown by this condition of affairs. Under the testimony for the defendant it is made definitely accurate that the intoxication did not follow the use of the Specific, and if it did it was not that character of intoxication that comes from the use of gin or whisky. Even the State's case shows that it was not the intoxication produced by the use of whisky or gin. If this compound was used as a medicine, usually sold as such, and not as a beverage to evade the local option law, under the quotation above, the sale of it would not be violative of the law. The quotation from the American and English Encyclopedia of Law, is sustained in the note by ample and numerous authorities. If this was a medical compound with only sufficient amount of gin included to preserve it, or to extract the properties from the ingredients, and was not usually sold as a beverage but as a medicine, it would not be violative of the statute to sell it, and the jury should have been given some criterion by which this question, which is the crucial point in the case, could be decided by them. We believe the special charges requested by appellant should have been given, and because they were not, the judgment is reversed and the cause remanded.

*Reversed and remanded.*