## F. W. WOOLWORTH CO. v. STATE.

No. A-9794. May 7, 1941.

(113 P. 2d 399.)

J. L. Trevathan, of El Reno, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and W. L. Funk, Co. Atty., of El Reno, for defendant in error.

JONES, J. The defendant, F. W. Woolworth Company, a corporation, was charged in the county court of Canadian county with the crime of selling two pints of a liquid compound known as "bay rum," alleged to be a substitute for malt, vinous, fermented, and spirituous liquors, and capable of being used as a beverage; was tried, convicted, and sentenced to pay a fine of $200, from which judgment an appeal has been taken to this court.

There are many assignments of error, but they may be all considered under the general assignment that the court erred in refusing to advise the jury to return a verdict of not guilty at the close of all of the evidence.

The information herein was filed under the provisions of Session Laws 1933, ch. 153, § 2, p. 338, 37 Okla. St. Ann. § 1, which states:

"It shall be unlawful for any person, individual or corporation to furnish, except as in this chapter provided, any spirituous, vinous, fermented or malt liquors, or any imitation thereof or substitute therefor, or to manufacture, sell, barter, give away or otherwise furnish any liquors or compounds of any kind or description whatsoever whether medicated or not which contain more than three and two-tenths (3.2%) per cent of alcohol, measured by weight, and which is capable of being used as a beverage, except preparations compounded by any licensed pharmacist, the sale of which would not subject him to the payment of the special tax required by the laws of the United States. * * *"

The proof on behalf of the state shows that one Clampitt Mangrum went into the place of business conducted by the defendant company in the city of El Reno, and purchased two bottles of bay rum from the manager of the store, which bottles were placed in a brown paper sack with another sack placed over the top of the bottles.

The first question to be determined is whether the proof is sufficient to show that bay rum is "capable of being used as a beverage," it being conceded by the defendant that a sale was made to Clampitt Mangrum and that the bay rum contains more than 3.2% of alcohol, measured by weight.

The term "capable of being used as a beverage" has never been defined by this court. It appears to us that the positions taken by the state and the defendant repre-

sent the two extremes, it apparently being the contention of the state that the term "capable of being used as a beverage" is a very broad term and should include all liquids, although not generally considered as beverages, yet which may be drunk by the individual, and which contain the prohibited percentage of alcohol. The defendant seeks to confine the term to those liquids which are manufactured solely for the purpose of drink, and accordingly would not include bitters containing alcohol, together with bitter herbs, or other medicinal ingredients, or compounds containing denatured alcohol, prepared in accordance with a specific formula approved by the United States Government, which, although containing a large amount of alcohol, is prepared by the manufacturer solely for use as toilet lotions.

The state, in its proof, introduced the testimony of four witnesses, including the man who made the purchase, who testified that they had drunk bay rum; that it had a bitter taste, but that they drank it for its effect.

On the other hand, the policeman who verified the information against the defendant testified that he had tasted bay rum, that it was as bitter as quinine, and that in his opinion it was not a good beverage.

The state chemist testified for the state that he had made an analysis of the bay rum for the county attorney, and that said bay rum contained brucine, which was a substance placed in alcohol for the purpose of denaturing it and rendering it unpalatable; that bay rum is commonly used as a lotion, is very bitter, and is not a good beverage; that it contained approximately 60% alcohol.

Another police officer testified that he had never drunk any bay rum, and refused to taste it, but would state that he used it as an after-shaving lotion.

Dewey Hebberd testified for the state that he was the manager of the defendant company, and made the sale in question; that bay rum is used as an after-shaving lotion, hair tonic, and by the ladies as a hand lotion by mixing rose water, glycerine and bay rum; that he did not know that bay rum was being used as a beverage, but had been advised by the county attorney that certain persons were using it to drink; and the county attorney furnished him with a list of names and asked him not to sell bay rum to those particular people; but that he could sell bay rum without question to any other people outside of those named on the list. That Clampitt Mangrum's name was not on the list; but that he asked him at the time the sale was made as to whether he was buying it to drink, and Mangrum said he was not.

The defendant introduced the testimony of seven witnesses, who operated drug stores or other places of business in the city of El Reno where bay rum was sold. The substance of their testimony, together with that of a witness for the Superior Products Company, who manufactured the bay rum in question, is that bay rum is ordinarily used as an after-shaving lotion or on the scalp; that it is a medicated product which is tax free so far as the Federal Government is concerned; that it is very bitter to the taste, as the denatured alcohol used in bay rum is prepared under a formula required by the Federal Government, which specifies that a certain percentage of brucine and butyl alcohol shall be used to denature the alcohol in order to make it unfit to drink. That all testified it was not reasonably fit for beverage purposes, and some of them went so far as to state that a person in his right mind would not drink it.

After a consideration of all of the authorities recited in the respective briefs of the parties hereto and others

not cited in the briefs, it is our conclusion that the definition of the term "capable of being used as a beverage," as contemplated by the Legislature in the passage of the act here involved, means a liquid that is reasonably capable of being drunk either for the pleasure of drinking or its after effect, and does not apply to a liquid that it is possible to swallow, but not reasonably fit or palatable. Such question is not to be determined by the name given to the liquid, but by the facts in each particular case.

"Beverage," as defined by Webster's New International Dictionary (1910 Ed.), means "drink," "liquid for drinking," "usually, drink artificially prepared and of an agreeable flavor."

If the liquid involved is not among the liquors ordinarily used as intoxicating beverages, but is a toilet article, where the distinctive character and effects of intoxicating liquors are gone and its use as a beverage is rendered undesirable or practically impossible by reason of other ingredients, and the alcohol contained therein has been denatured under a formula prescribed in the United States Dispensatory or like standard authority and is used merely as a vehicle for preservation of the other ingredients, the article will not be within the prohibition of our statute, although its use may produce intoxication.

In our research we have found a few states in which the question of the validity of a sale of bay rum under prohibitory liquor statutes similar to ours was involved; and, without exception, these cases have held that the statute does not include toilet articles not ordinarily used as a beverage, such as bay rum. One of them, the most interesting of these decisions, is the early case from the Supreme Court of Kansas, styled Intoxicating Liquor Cases, 25 Kan. 751, 37 Am. Rep. 284, where it was held:

"A statute defines intoxicating liquors as 'all liquors and mixtures, by whatever name called, that will produce intoxication.' Held, not to embrace medicines and toilet articles, not ordinarily used as beverages, such as tincture of gentian, bay rum, and essence of lemon, although containing alcohol."

The Kansas statute involved reads:

"All liquors mentioned in section one of this act, and all other liquors or mixtures thereof, by whatever name called, that will produce intoxication, shall be considered and held to be intoxicating liquors within the meaning of this act."

In the body of the opinion, the court stated:

"Alcohol is the intoxicating principle, the basis of all intoxicating drinks. Whatever contains alcohol will, if a sufficient quantity be taken, produce intoxication. Hence, whatever liquor contains alcohol is within the statute. So reads its letter. But, when we come to inquire as to the liquors which contain alcohol, we find a lengthy list of fluids which are never used as beverages. Cologne, extract of lemon, bay rum, paregoric, tincture of gentian, and many other medicinal preparations contain alcohol, and all will produce intoxication. They are seldom used as a beverage, and yet they may be. Intoxication produced by drinking bay rum has been known. Yet few will drink it. Its uses are for the toilet. But three of the cases before us are prosecutions for the sale of bay rum, essence of lemon, and tincture of gentian, respectively. These preparations contain alcohol, and will each, it is charged, produce intoxication. If the statute includes such articles, many of them are absolutely and wholly shut out from sale. * * *

"Now, the cases before us group themselves into three classes; and the same division is far reaching and of general application. The first embraces what are generally and popularly known as intoxicating liquors, unmixed with any other substances. Thus in one case the sale of brandy is charged. The second includes articles equally

well known, standard articles, and which, while containing alcohol, are never classed as intoxicating beverages. Their uses are culinary, medical, or for the toilet. They are named in the United States dispensatory and other similar standard authorities; the formulae for their preparation are there given; their uses and character are as well recognized and known by their names as those of a horse, a spade, or an arithmetic. The possibility of a different and occasional use does not change their recognized and established character. A particular spade may be fixed up for a parlor ornament, but the spade does not belong there. So, essence of lemon may contain enough alcohol to produce intoxication, more alcohol proportionately than many kinds of wine or beer. It is possible that a man may get drunk upon it, but it is no intoxicating liquor. Bay rum, cologne, paregoric, tinctures generally, all contain alcohol, but in no fair or reasonable sense are they intoxicating liquors or mixtures thereof. The third class embraces compounds, preparations, in which the alcoholic stimulant is present, which are not of established name and character, which are not found in the United States dispensatory, or other like standard authorities, and which may be purely medicinal in their purpose and effect, or mere substitutes for the usual intoxicating beverages. If not intoxicating liquors, they may be 'mixtures thereof' within the scope of the statute. Here belong many of the patent medicines, the bitters, cordials, and tonics of the day. Here also are such compounds as that charged in one of the informations before us, a compound of whisky, tolu, and wild cherry.

"Now, in reference to these several classes, we think these rules may be laid down: The first class is within and the second without the statute, and the court, as matter of law, may so declare. It is unnecessary, in charging the sale of whisky, or brandy, etc., to allege that it will produce intoxication; nor will it bring the sale of essence of lemon within the statute to allege that such essence will produce intoxication. The courts will take judicial notice of the uses and character of these articles. You need not prove what bread is, or for what purposes

it is used. No more need you in respect to whisky or gin on the one hand, or cologne, or bay rum on the other. They are all articles of established name and character. In reference to the third class, the question is one of fact, and must be referred to a jury. If the compound or preparation be such that the distinctive character and effect of intoxicating liquor are gone, that its use as an intoxicating beverage is practically impossible by reason of the other ingredients, it is not within the statute. The mere presence of alcohol does not necessarily bring the article within the prohibition. The influence of the alcohol may be counteracted by the other elements, and the compound be strictly and fairly only a medicine. On the other hand, if the intoxicating liquor remain as a distinctive force in the compound, and such compound is reasonably liable to be used as an intoxicating beverage, it is within the statute; and this, though it contain many other ingredients, and ingredients of an independent and beneficial force in counteracting disease or strengthening the system. Intoxicating liquors or mixtures thereof: this, reasonably construed, means liquors which will intoxicate, and which are commonly used as beverages for such purposes, and also any mixtures of such liquors, as, retaining their intoxicating qualities, it may fairly be presumed may be used as a beverage, and become a substitute for the ordinary intoxicating drinks. Whether any particular compound or preparation of this class is then within or without the statute is a question of fact, to be established by the testimony and determined by a jury. The courts may not say as a matter of law that the presence of a certain per cent. of alcohol brings the compound within the prohibition, or that any particular ingredient does or does not destroy the intoxicating influence of the alcohol, or prevent it from ever becoming an intoxicating beverage. Of course, the larger the per cent of alcohol and the more potent the other ingredients, the more probably does it fall within or without the statute; but in each case the question is one of fact, and to be settled as other questions of fact. (State v. Laffer, 38 Iowa, 422, 426; Russell v. Sloan, 33 Vt. 656, 659; Com. v. Ramsdell, Sup., Ct. Mass., 23 Albany L. J. 414 [130 Mass. 68].)"

This case was partially overruled in the later case of State v. Miller, 92 Kan. 994, 142 P. 979, L.R.A. 1917F, 238, Ann. Cas. 1916B, 365, in which it was held that Jamaica Ginger was an intoxicating liquor. We think, however, that the earlier opinion is well reasoned and particularly applicable to toilet articles such as bay rum.

See, also, Mason v. State, 1 Ga. App. 534, 58 S.E. 139; Roberts v. State, 4 Ga. App, 207, 60 S.E. 1082; Carl v. State, 87 Ala. 17, 6 So. 118, 4 L.R.A. 380; Bertrand v. State, 73 Miss. 51, 18 So. 545; Pearce v. State, 48 Tex. Cr. 352, 88 S.W. 234, 13 Ann. Cas. 636; Schraeder v. Sears, 192 Iowa, 604, 185 N.W. 110; Schemmer v. State, 105 Neb. 324, 180 N.W. 581.

In Pearce v. State, supra [48 Tex. Cr. 352, 88 S.W. 235, 13 Ann. Cas. 636], it is stated:

"The rule in regard to matters of this sort is well stated in volume 17, American and English Encyclopedia of Law, volume 204. 'It has been held that whatever is generally and popularly know as medicine or an article for the toilet, recognized and the formula of its preparation prescribed in the United States Dispensatory or like standard authority, and not among the liquors ordinarily used as intoxicating beverages, such as tincture of gentian, paregoric, bay rum, cologne, etc., is not an intoxicating liquor within the meaning of the statutes regulating and prohibiting the traffic in intoxicating liquors, and the courts may so declare as a matter of law, notwithstanding such articles contain alcohol and may produce intoxication. * * * If the compound or preparation be such that the distinctive character and effects of intoxicating liquors are gone, and its use as a beverage is rendered undesirable or practically impossible by reason of the other ingredients, and the liquor is used merely as a vehicle for or preservation of the other ingredients, or to extract their virtues and hold them in solution, the article will not be within the prohibition of the statute, although its use may produce intoxication.' "

In Roberts v. State, supra [4 Ga. App. 207, 60 S.E. 1086], we find the following language:

"It has been held by the Supreme Court in Bradley v. State, 121 Ga. 201, 206, 48 S.E. 981, and by this court in Mason v. State, 1 Ga. App. 534, 58 S.E. 139, that the words 'intoxicating liquors,' or 'alcoholic and spirituous liquors,' as used in prohibition statutes, include liquors intended for use as a beverage, or capable of being so used, containing alcohol, obtained either by fermentation or distillation, or both, in such a proportion as would produce intoxication when drunk to excess; and it was further held in these decisions that medical, toilet, and culinary preparations recognized as such by standard authorities, and generally used as medicines, and not reasonably capable of use as intoxicating beverages, are not to be regarded as within the meaning of the expression 'intoxicating liquors,' although such articles are liquid, contain alcohol, and may produce intoxication. The courts will take judicial notice of the uses and character of these articles, and, even though they contain alcohol in sufficient quantity to produce intoxication if drunk to excess, that they were not intended to be drunk at all; and the people are not to be deprived of their salutary uses because they might be reached by the letter of a law whose sole and vital purpose is the prevention of intemperance in the use of intoxicating liquors as a beverage."

Our statute is broad, but it does limit liquids to the test of being capable of being used as a beverage.

The county attorney argued with some force that the term "capable of being used as a beverage" is not synonymous with the "fit for use as a beverage;" and since the testimony of the witnesses for the defendant only went so far as to state that bay rum was unfit for beverage purposes, that such test is insufficient to show that it was not capable of being used as a beverage.

However, fitness to be used as a beverage is certainly one of the strongest factors in determining whether the

liquid involved is capable of being used as a beverage. Otherwise, we shall have to hold that any liquid that may be swallowed would be capable of being used as a beverage.

As shown by the testimony of the chemist, the United States Government applies a tax on undiluted alcohol. That it provides certain formulae for denaturing alcohol, which should be used in certain compounds and not as beverages, which formula, so far as the bay rum involved herein is concerned, consists in the use of brucine and butyl alcohol. The Federal Government evidently thought that the insertion of brucine would be sufficient to render the article of bay rum thoroughly unpalatable, and its use confined to the object for which it was manufactured, to wit: that as a toilet article for use as a hand and scalp lotion.

The state evidently relies solely upon the testimony of the four men who testified that they had drunk bay rum frequently to prove that it was "capable of being used as a beverage." The evidence shows these men were habitual drunkards, who drank anything with alcohol in it. These well-seasoned inebriates are prone to secure some substitute for intoxicating liquor if the same cannot be found, whether it be in the form of bay rum, flavoring extract, canned heat, Jamaica ginger, bitters, or any of dozens of various kinds of medicated compounds and after-shaving lotions, so long as the liquid contained alcohol in sufficient quantities that they could "get a kick" from it, and although the partaking might seriously endanger their health, as such grogs' appetite must be satisfied. But the fact that these perennial drunkards can stomach bay rum is not to this court sufficient grounds for holding that this toilet article comes within the legislative classification of intoxicating liquor. If we were to hold otherwise, it would brand as criminal hundreds of our citizens who have in good faith sold bay rum and kindred toilet articles

under the belief that the same were not intoxicating liquors as defined under our statutes.

The proof shows that the defendant company has wholly abandoned the sale of bay rum. We recognize the fact that some people will attempt to evade the effect of the prohibitory laws by selling so-called medicated compounds under various names solely to have the same used as beverages. This court will be very liberal in the construction of the prohibitory laws for the purpose of preventing its violation by any shift or device. The fact as to whether any liquid comes within the classification of intoxicating liquors under our law become a question of fact, dependent upon all facts and circumstances in each particular case. Here the facts affirmatively show by the state's own proof that the bay rum in question is very unpalatable and not reasonably fit for use as a beverage. It is further affirmatively shown by the state's witness Hebberd that he did not know that the liquid was being purchased for beverage purposes and had been specifically informed by the purchaser that it was not so to be used.

After considering all of the facts and circumstances in this case, it is apparent that the evidence is insufficient to sustain the verdict.

For the reasons hereinabove stated, the judgment of the county court of Canadian county is reversed.

BAREFOOT, P. J., and DOYLE, J., concur.